JOHN BARTON, SHERIFF, ET AL. V. HENRY B. SHULL, CORONER, ET AL.

FILED SEPTEMBER 18, 1901.  No. 11,901.

1. **Law of the Case.** Questions raised and decided on former review of the same action *held* to be and followed as the law of the case.

2. **Jury Must Follow Court's Instructions, Right or Wrong.** It is the duty of the jury in all cases to follow the instructions given them by the court, whether correct or not; and if they fail to do so, the verdict will be deemed to be contrary to law and should be set aside and a new trial ordered.

3. **When Exceptions Are Taken to Sureties, Sheriff Must Require Justification or Become Responsible.** When exceptions are taken to the sufficiency of sureties in a replevin undertaking within the time provided by statute, and the sheriff or other officer approving the replevin undertaking fails to have the sureties justify as bail on arrest, he, unless such justification is waived, becomes thereby responsible on his official bond for the sufficiency of such sureties, not only when the replevin undertaking is approved, but also at the time the defendant in replevin is in a position to enforce a judgment rendered in his favor in the replevin action or proceed against the sureties on the undertaking executed by them.

4. **Evidence Does Not Support Verdict.** Evidence examined, and *held* not to support the verdict returned by the jury.

5. **Verdict Contrary to Instructions.** The verdict returned by the jury *held* to be contrary to the instructions of the court and should have been set aside.

6. **Levy in Attachment: REPLEVIN: LEVY BY EXECUTION: SUIT ON BOND: DEFENSE PRO TANTO.** Where property levied upon under writs of attachment is taken from an officer by replevin proceedings, and after judgment in the attachment case the same property is levied upon and seized by the officer from whom replevied by virtue of an execution issued on the judgment, regaining possession of the same property under the execution, undiminished in value, constitutes a defense *pro tanto* in an

action on the replevin undertaking or in an action for taking insufficient sureties on the replevin bond, and the fact that the property is subsequently replevied by the plaintiffs in' the first replevin action, or their assignees, will not render the defense unavailable.

7. **Granting New Trial No Error.** Action of the trial court in granting a new trial on a former hearing *held* without error.

ERROR from the district court for Saline county. Tried below before STUBBS, J. *Reversed.*

*Hastings & Hastings,* for plaintiffs in error:

It is the duty of the jury in all cases to follow the instructions given them in charge by the court. *Jewett v. Smart,* 11 Ia., 505 [also Nebr. cases cited in opinion].

Any other ruling would submit parties to the injustice of having their evidence and facts shaped to one view of the law by the trial court and then decided upon another without any opportunity to submit the facts and evidence bearing upon that view. *Matthewson v. Burr,* 6 Nebr., 312; *Cook v. Pickrel,* 20 Nebr., 433; *Missouri P. R. Co. v. Cassity,* 44 Kan., 207, 24 Pac. Rep., 88; *Hardin v. Sheuey,* 40 Nebr., 623, 43 Nebr., 806.

Sureties did not justify as bail on arrest.

The fact that the juror Gavin was related to counsel is, probably, not technical ground for challenge. *Wood v. Wood,* 52 N. H., 422; *Funk v. Ely,* 45 Pa. St., 444.

*Tibbets Bros., Morey & Anderson,* also for plaintiffs in error.

*Fayette I. Foss, A. S. Sands, J. D. Pope* and *B. V. Kohout, contra.*

HOLCOMB, J.

The plaintiffs in error, also plaintiffs below, began an action against the defendant, Henry B. Shull, as coroner, and the sureties on his official bond, for having negligently approved an insufficient undertaking in replevin in an ac-

tion begun against John Barton as sheriff. The sheriff, defendant in the replevin action, had attached a certain stock of drugs and other merchandise kept therewith at the instance of the other plaintiffs in this action, who were creditors of a certain firm or copartnership doing business under the firm name and style of Foster & Ayres. The property was attached as belonging to the said copartnership or firm of Foster & Ayres. Thereafter the plaintiffs in the replevin action who were the father and mother, and father-in-law and mother-in-law respectively of the individual members of the said firm of Foster & Ayres, replevied the attached property as belonging to them, the coroner serving the replevin writ on the sheriff, taking the property by virtue thereof and delivering it to the said plaintiffs after taking and approving a bond in replevin to which objections were made and exceptions taken, as to the sufficiency of the sureties, by the sheriff, the defendant in this action.

The cause by proceedings in error has once before been brought to this court for consideration, the opinions disposing of the case being found in *Shull v. Barton,* 56 Nebr., 716, and on rehearing in 58 Nebr., 742. In the two opinions referred to will be found an extended discussion of the case and a decision on several points raised in the trial thereof. We will not undertake again to consider matters therein disposed of. The questions therein determined having once been decided will be followed as the law of the case.

It will be observed that the specific cause of action on which a right of recovery is based is the alleged failure of the coroner to have the sureties on the replevin bond justify as bail on arrest, after the defendant in the replevin action, and within the time provided by statute, had duly objected and excepted to the sufficiency of such sureties, they being, as alleged, of insufficient financial responsibility to respond to the obligations assumed by entering into the replevin undertaking. No attempt was made by the coroner to have the sureties justify, in the manner

pointed out by statute, after objections had been made to their sufficiency, unless the taking by the coroner of an affidavit by each of the two sureties in the most general terms as to the value of the property of each above debts and exemptions and subject to execution can be regarded as an attempt at justification. Certainly it was no such justification as the statute requires, as has heretofore in this case been decided. The court instructed the jury, and we think properly, that under the evidence no legal justification as required by statute had been exacted by the coroner from the sureties after he was notified that they were objected to as insufficient, and that his liability to the plaintiffs in this action must be determined from the standpoint that no justification of the sureties had been required after due notice of exceptions to their sufficiency. On this point the jury were instructed as follows:

"13. It appears from the undisputed evidence that the replevin action alleged by plaintiffs was commenced by Foster & Co., that property was taken and an undertaking with Killer and Sarah Jane Custer taken by defendant Shull, that he was coroner and the other defendants his sureties on his official bond, that objection was made to the sufficiency of the sureties within twenty-four hours by plaintiff, and it does not appear that the sureties have ever justified as required by law; it also appears by undisputed evidence that plaintiff Barton recovered judgment against Foster and Co., as stated, that an execution was issued and returned by H. B. Shull coroner, unsatisfied.

"14. The statute as before stated, having provided that the coroner should be responsible for the sufficiency of the sureties until they justify in the manner stated, and it not appearing that they have ever done so, the only remaining questions are: first, were these sureties insufficient when this action was begun August 19th, 1893? 2nd, If they were at that time insufficient had sheriff Barton received the property back in such a way as to discharge the liability upon the bond?

"15. These two questions, gentlemen, are all that is left for your consideration. With regard to the first, if you believe from the evidence that the amount of the replevin judgment could not have been made by legal process in the state of Nebraska on August 19th, 1893, against Sarah Jane Custer and Henry Killer, then they were insufficient at that time. With regard to the second, if you believe from the evidence that the property was taken back, but immediately taken away by the same parties, or their grantees on another replevin action, and has not been returned nor paid for, nor in any manner recovered to the use of the plaintiffs, or any of them, that constitutes no defense to defendant's liability."

The jury having returned a verdict for the defendants upon which, after a motion for a new trial was overruled, judgment was rendered in their favor, it is assigned, as the principal ground of error calling for a reversal of the judgment, that the verdict is contrary to and unsupported by the evidence and is contrary to the instructions of the court. Without at the present time discussing the correctness of the instructions, the rule is, that it is the duty of the jury in all cases to follow the instructions given them by the court, whether correct or not; and if they fail to do so the verdict will be deemed to be contrary to law and should be set aside and a new trial ordered. The reasons for the rule are obvious; and any other would lead to endless confusion, sanction an utter disregard of the court's opinion of the law applicable to the pleadings and the evidence, and render its instructions entirely impotent except when willed otherwise by the jury. A refusal or failure to follow the instructions of the court is sufficient ground for setting aside a verdict and granting a new trial. *Standiford v. Green,* 54 Nebr., 10; *Esterly Harvesting Machine. Co. v. Berg,* 52 Nebr., 147; *Omaha & R. V. R. Co. v. Hall,* 33 Nebr., 229; *Aultman v. Reams,* 9 Nebr., 487.

Assuming, then, that the instructions heretofore quoted correctly presented to the jury the only question to be by

them considered and determined, a brief examination and consideration of the evidence is required of us in ascertaining whether the verdict returned can be sustained under the evidence and the court's instructions. The evidence on the first trial, which we assume was quite similar to that submitted in the subsequent case, was reviewed at some length by Mr. Commissioner RAGAN, who wrote the opinion of the court first handed down, heretofore cited, 56 Nebr., 716, and the conclusion there reached was that, entirely aside from the provisions of the Code requiring the sureties to justify when objected to, as bail on arrest, in order to relieve the approving officer from responsibility, the coroner, in taking and approving the sureties on the replevin undertaking, acted negligently, for which he was responsible in damages to the defendant for all loss sustained by reason of the insufficiency of such sureties; that the sureties were clearly insufficient and the officer acted negligently, for which an action would lie when he approved the replevin bond. Much stronger would be the reason for holding him responsible under the provisions of the statute referred to. On rehearing it was determined that the provisions for justification as bail on arrest were in force and operative and that the officer approving the replevin bond, in order to be relieved from responsibility, must comply with such provisions unless exceptions to the sufficiency of the sureties were waived by the defendant in the replevin action. 58 Nebr., 742. By section 189 of the Code of Civil Procedure it is provided: "The defendant may, within twenty-four hours from the time the undertaking referred to in the preceding section is given by the plaintiff, give notice to the sheriff that he excepts to the sufficiency of the sureties. If he fail to do so, he must be deemed to have waived all objections to them. When the defendant excepts, the sureties must justify upon notice as bail on arrest. The sheriff or other officer shall be responsible for the sufficiency of the sureties, until the objection to them is waived as above provided or until they justify. The property shall be deliv-

ered to the plaintiff, when the undertaking, required by section one hundred and eighty-six has been given." To justify as bail on arrest, it is provided that, upon written notice to the defendant or his attorney, the sureties may justify before a judge or clerk of the court in which the action is brought, a probate judge, or justice of the peace, at a specified time and place mentioned, and may be examined on oath or affirmation touching his or their sufficiency in such manner as the officer may think proper. If the officer finds the surety sufficient, he shall indorse his allowance on the undertaking and cause the same to be filed with the clerk. Says the statute, "The sheriff or other officer shall be responsible for the sufficiency of the sureties, until the objection to them is waived as above provided or until they justify."

Clearly, then, if we give force and effect to the plain provisions of the statute, as we are in duty bound to do, the defendant and the sureties on his official bond are liable to the defendant in replevin for the damages he sustained by taking from him the property he was adjudged to be entitled to under his attachment writs, if at the time he may have proceeded against the sureties on the replevin undertaking he found them insufficient and incapable of responding to the terms of the obligation, having no property whereby by legal process he might obtain satisfaction from them of the judgment in his favor in the replevin action for a return of the property or of its value to the extent of his special interest therein in case a return could not be had. By the coroner's failure to have the sureties justify as provided by law when objection to their sufficiency was made, he became responsible on his official bond for the sufficiency of the sureties to respond to a judgment for a return of the property or of its value, including damages and costs. Shinn, Replevin, secs. 394, 395, 906, 907; Cobbey, Replevin, sec. 694; Wells, Replevin, sec. 289. Of the two sureties accepted by the coroner on the replevin undertaking, one was a clerk in a store which was closed by the attachment proceedings, and the other, a

single woman, was employed in the family of the plaintiffs in replevin, her wages being fixed at no particular or stated sum. From the evidence we think it clearly appears, as was stated by Commissioner RAGAN in the first opinion, that the sureties, at the time of their acceptance as such, were not of such financial responsibility as to render them qualified as sufficient sureties on the obligation they signed, and the officer was negligent in approving the bond thus tendered without further inquiry and investigation as to their ownership of property subject to execution and forced sale and the nature and location of the same, if called upon to respond to the obligation by the defendant in replevin according to the terms of the undertaking. The evidence is overwhelming and conclusive to the effect that at the time the defendant in replevin had obtained his judgment in that action and was in a position to move against the sureties on the undertaking, for the purpose of obtaining satisfaction of the judgment, he was wholly and entirely unable to collect anything from the sureties on the obligation they had assumed, and that no property of any kind or nature belonging to them could be found in the jurisdiction of the court with which to satisfy such judgment. The surety Henry Killer at the time he signed the undertaking, as appears from the evidence, had no visible property in his own name subject to execution and forced sale. His father, it appears, had died shortly previous and he claimed eighty acres of real estate in an adjoining county, belonging to his father's estate under the terms of a last will and testament. This will, it appears, was for some reason held to be invalid and the young man, as he testified, sold his interest in the real estate, shortly after signing the bond, to his mother for $1,000. He also claims to have collected from his father's estate $300 for wages due him for work done before the father's death. All this money, if received, appears to have been dissipated in traveling, and it is shown that in the spring of 1893, and a few months only prior to the beginning of this action, he returned no property for assessment and

41

shortly left the state. Others competent to speak on the subject also testified that he was not possessed of any property and was substantially without means or property out of which a judgment could be satisfied. The official records where he resided failed to disclose any property subject to assessment, nor did the real estate records show any real property belonging to him. It is obvious that, as a surety on a replevin undertaking, he was practically worthless. In an affidavit made before the coroner, at the time of his acceptance as a surety, he swore that he owned real estate in Saline county, where he then lived, not exempt from execution and aside from incumbrances of the value of $947.28. Save such interest as he was possessed of in his deceased father's real estate in Jefferson county, the evidence discloses that he owned no real estate whatever at the time of making the affidavit or since. The other surety, Sarah Jane Custer, made affidavit that she owned real estate in Saline county not exempt from execution and aside from incumbrances of the value of $2,500. The evidence as to her financial responsibility appears no better than her cosurety. She had at the time been living in the family of the plaintiff in error for several years, first for wages at a stipulated sum, and later on without any agreement as to wages and apparently as one of the members of the family. She appears to be a person of very limited means and with no visible property until about the time of the transaction under consideration. Shortly prior to the time she signed the replevin bond, the plaintiff in replevin and a son-in-law, the defendant in the attachment proceedings, conveyed to her certain town lots on which they resided in DeWitt, Saline county, which by competent judges is valued at about $900. The property was encumbered for $450. Shortly afterward the property was conveyed by her to one Vanderpool, who claims to have purchased L. M. Foster's interest in the stock of merchandise replevied from the plaintiff in this action. There is also testimony tending to prove that L. M. Foster borrowed of her several years before $800, and that as se-

curity she had a mortgage on a stock of drugs owned by him which he afterwards, as he says, turned over to her in satisfaction of the debt. It also appears that after the property had been attached by the sheriff a mortgage was executed thereon in favor of the surety in the replevin bond, Sarah Jane Custer, for $2,500. These circumstances can hardly be regarded as other than a shifting of the property between the members of the same family for the purpose of defrauding honest and bona-fide creditors, and is entitled to but slight consideration in fixing the financial responsibility of the parties connected therewith. Soon after the execution of the replevin undertaking this surety disposed of all property held in her name and with the Fosters left the county and state. At the commencement of the present action nothing whatever was left within the jurisdiction of the court belonging to her or her cosurety and the replevin bond was utterly worthless. The property taken on the replevin writ was valued at the sum of $3,447.24. The sureties taken when the bond was approved were at that time manifestly insufficient. At the time the defendant in replevin had recovered his judgment and was ready to proceed to enforce it or to have recourse on the replevin undertaking the sureties had no property, were without the jurisdiction of the court, and the judgment creditors in the replevin action, as to them, was entirely remediless. The responsibility of the approving officer for this state of affairs is by law fixed and made certain, and from the consequences of which he can not escape by attempting to prove that at the time the bond was approved the sureties were sufficient. As we understand the record the defendant practically concedes that the sureties were worthless when this action was begun. Whether correct or not in this regard it is quite obvious that the sureties on the replevin bond were, at the commencement of this action, insufficient and wholly unable to respond in damages or make good their undertaking for return of the property or for its value in case a return could not be had. This conclusion will not be seriously questioned by any who have studied the record now before us.

The defense interposed, wherein it is claimed that the sheriff, after the property was taken from him under the replevin writ, again obtained possession of it in as good condition, and of the same value, under writs of execution in favor of the same parties and other creditors, can not, under the instructions of the trial court, be sustained. It is proved beyond controversy that after the execution writs were levied on the property, admitting it to have been the same that was taken under the replevin writ, and of undiminished value, it was again replevied by the same plaintiff except that of L. M. Foster, who had sold his interest to one Vanderpool, who, as assignee, joined with the other plaintiff in the first replevin action in again replevying the same property, obtaining possession thereof and removing the property from the county. The sheriff under his executions gained nothing for himself or those he represented by seizing the property under the writs of execution issued on the judgments obtained after the institution of the first replevin action. By the trial court's instructions if the plaintiffs in the first replevin action, or their assignee, regained possession of the property after the sheriff had seized it under the executions placed in his hands, the fact that he had once had the possession of the property after it was taken from him by the replevin writ would not operate as a defense in favor of the coroner and relieve him from responsibility for taking insufficient security. If the instructions were followed which the jury were in duty bound to follow on this issue under the undisputed evidence, no other conclusion can be justified than that the sheriff lost the possession of the property by a second replevin action instituted by one of the same parties to the first replevin action and the assignee of the other. No other conclusion can therefore be arrived at than that the verdict is not supported by the evidence and is contrary to the instructions of the court, for which the judgment must be reversed.

We think the jury were misled by the argument of counsel for the defendant in an attempt to maintain the posi-

tion that the sureties had in fact justified, although not in strict conformity with the statute, and that the defendant had waived the required statutory justifications by his actions and statements to the coroner, although neither of these questions were properly before the jury for their consideration. We perhaps would be justified in holding that the conduct of the counsel amounted to prejudicial error in that, in the face of objections by opposing counsel and contrary to the instructions of the court, he persisted in presenting and arguing to the jury as grounds for a verdict in favor of defendant questions not presented by the evidence or pleadings for their consideration. We, however, do not regard it as necessary to determine the question in view of the conclusions already reached. This cause is here for the second time. Although not necessary to be determined in a proper disposition of the present proceeding, we are constrained to express our disapproval of that part of the fifteenth instruction given the jury by the trial court relating to the question of whether the sheriff had received the property back in such a way as to discharge the liability of the coroner for taking insufficient replevin bond. It is there stated in substance that if the sheriff had, subsequent to the first replevin suit, regained possession of the property, but it was immediately taken away by the same parties or their grantees in another replevin action, then the retaking by the sheriff would constitute no defense to the liability of the coroner for taking insufficient security or his failure to have the sureties justify in the manner provided by law. We do this that the action may be speedily and finally disposed of. The replevin undertaking provided that the action should be prosecuted without delay, to pay all damages and costs adjudged against the plaintiff and for a return of the property or in case a return could not be had, to pay its value and lawful interest to the extent of the defendant's special property therein together with damages and costs. When the sheriff took the property on executions in favor of the same parties for whom the attachment writs were levied

to the extent of the property so retaken, this constitutes a defense *pro tanto* in an action against the coroner for taking insufficient security, and satisfied, to the extent of the property so retaken by the executions, the conditions of the replevin undertaking providing for a return of the property to the defendant in case a judgment for a return should be rendered. The fact that the property is subsequently again replevied does not, as it occurs to us, afford any sufficient reason for changing the rule announced in the opinion on the former hearing. The instruction we regard as inconsistent with the views therein expressed.

The defendant, by virtue of his attachment writ, had a special property which he could enforce when he obtained his judgment in the replevin action. Instead of enforcing this right when judgment was obtained in the main case and in the replevin action, an execution is issued and levied on the same property, by which he gains possession of the same property lost in the replevin action. This practically works an abandonment or waiver of the attachment lien for the purpose of enforcing the execution. He obtains possession of the same property and the conditions of the replevin undertaking are presumably good and altogether sufficient to indemnify and save him harmless. The office of the replevin undertaking is to take, in a limited sense, the place of the property replevied and protect the person from whom taken either by a return of the property or the payment of its value with interest. Now, the sheriff, having regained possession of the property first replevied, or such of it as he in fact seized under the executions issued for the benefit of the same attaching creditors, has accomplished all that he can rightfully demand of the sureties on the replevin bond and has no cause of complaint against them so far as a return of such property is concerned, nor can he complain in that respect of the approving officer who approved the undertaking. If the property is again taken from him, then the law furnishes him an adequate remedy on the bond which must be given before he can rightfully be deprived of its possession. He

has the full benefit of the property which the undertaking, alleged to be insufficient and negligently taken, provides shall be returned to him, in the possession of the property itself or the execution of another undertaking for its return to him in case a return is adjudged in his favor. While the multiplicity of suits is not to be commended, but rather condemned, the sheriff is not in a position to take advantage of this abnormal state of affairs. He was not content to rest on the lien obtained by the levy of the attachment writ but seeks also to obtain a lien on part of the same property by the levy of an execution for the purpose of satisfying the same obligation. We are, therefore, of the opinion that, notwithstanding the retaking of the property from the sheriff by the second replevin action, to the extent that he regained possession of the same property in as good condition and of equal value which was taken from him by the replevin writ first levied and for the return of which the insufficient replevin bond was given, that this constitutes a defense *pro tanto* in favor of the coroner in an action on his official bond for approving an insufficient replevin undertaking. It would seem on principle that a return of the same property to the defendant in replevin in as good condition and of equal value as when taken under the writ, either voluntary or by legal process, is a good defense in a suit on the replevin undertaking for a return of the property in case it should be so adjudged, and this view is supported, we think, by the former expressions of this court in the case at bar as well as in other actions when the subject has been under consideration. If our views in this respect are correct and are supported by authority, as we think they are, it appears to us that the fact that the property after being returned was again taken away from the defendant in a new replevin action instituted for that purpose, would not be cause for changing the principle or rendering it inapplicable when invoked by those liable directly or indirectly on the replevin undertaking first executed. If a good defense partially or *in toto* has arisen in favor of the coroner by

reason of a return of the property taken on the writ and for which he is held responsible, the defense would not be rendered unavailing by a subsequent retaking of the same property in a new action begun by the same plaintiffs or their asignees and for the return of which property a new undertaking had been executed in favor of the defendant in replevin. This, we think, is the logical conclusion to be reached from what has already been decided in the present case, and is in harmony with the views expressed in the following authorities: *Otto v. Burch,* 50 Nebr., 894; *Rinker v. Lee,* 29 Nebr., 783; *Harrow v. Ryan,* 31 Ia., 156.

The defendants in error, by way of cross-petition, seek to predicate error on the ruling of the trial court in granting a new trial on plaintiff's motion after hearing had at a former term of court. It appears that a trial was had wherein the pleadings, the evidence, and the instructions were substantially the same as at the last trial and in which a verdict was returned in favor of the defendants. The motion for a new trial was sustained, the verdict set aside, and another trial ordered. The trial court could not have consistently done otherwise, and from the views entertained by us regarding the last trial, as heretofore expressed, it logically follows that no error was committed in granting the new trial of which complaint is now made by the defendants in error.

The judgment is reversed and the cause remanded for further proceedings in accordance with law.

REVERSED AND REMANDED.

SULLIVAN, J., absent, not voting.