CASE 29.—ACTION BY THE SNEAD ARCHITECTURAL IRON WORKS AGAINST E. P. LYNCH ON A CONTRACT. February 26.

# Lynch v. Snead Architectural Iron Work s

Appeal from Jefferson Circuit Court. (C. P. Branch, Second Division).

THOS. R. GORDON, Judge.

Judgment for plaintiff. Defendant appeals—Reversed.

1. New Trial—Grounds—"Verdict Contrary to Law."—A verdict is contrary to law within Civ. Code Prac. section 340, subsection 6, authorizing a new trial, where the verdict is contrary to law, when it is contrary to the instructions whether they are right or wrong.

2. Contracts—Action for Breach—Instructions—Evidence.—Where, in an action for damages for breach of contract to receive structural steel for the alteration of a building, defendant contended that it was agreed that the oral contract was to be reduced to writing and that plaintiff should execute a bond, and that plaintiff refused to sign the contract and execute the bond, an instruction authorizing a recovery if plaintiff had a contract for the work unless it was understood that the contract should be reduced to writing and signed

and should be guaranteed by a bond, in which case defendant was entitled to a verdict, properly submitted the issues.

3. Trial—Submission of Issues to Jury—Evidence—Sufficiency.— Though the overwhelming weight of the evidence supports one contention, the court must submit the issue to the jury where there is some evidence to the contrary.

4. Contracts—Actions for Breach — Evidence — Instructions.—Defendant having admitted that he had notified plaintiff that he would not receive the materials on account of plaintiff's refusal to sign a contract and give the bond, an instruction that, though plaintiff failed to do the work within the time prescribed, if such failure was by reason of a notification from defendant that he would not take the work, the delay of plaintiff would not defeat a recovery, was erroneous for failing to present the issue whether the contract had been closed without reduction to writing or the giving of a bond.

5. New Trial—Verdict Against the Evidence.—A verdict is not against the evidence when prejudicial errors either in the admission of evidence or in the rulings of the court were committed during the progress of the trial.

GIBSON, MARSHALL & GIBSON for appellant.

HELM BRUCE of Counsel.

POINTS RELIED ON.

1. The execution and delivery to him of a written contract, together with a surety bond guaranteeing the performance of same, was made a condition precedent by Lynch to the letting of the contract for the iron work to the appellee.

2. Conceding that there was a verbal contract between Lynch and appellee, the appellee willfully broke and repudiated and failed to comply with any part of it.

3. It is conceded by appellee that no effort was with the contract which it alleges was made between it and Lynch.

4. There has never been any offer of delivery of the material.

ALFRED AND JOSEPH SELLIGMAN for appellee.

POINTS AND AUTHORITIES.

1. The first instruction was erroneously favorable to appellant in that it submitted to the jury affirmative matters of defense not pleaded.    (Cyl. Law & Procedure, vol. 9, page 646; Hall, &c.

Lynch v. Snead Architectural Iron Works.

v. Smith, 14 Bush 615; 4 Ency. Pl. & Prac. 953; Newman Pl. & Prac., 2nd Ed., sec. 424; Civil Code, 95; 1 Ency. Pl. & Prac. 830; Idem 845; Denton v. Logan, 3 Metc. 435; 1 Ency. Pl. & Prac. 851.)

2. The verdict is fully supported by the evidence even as to matters covered by the instruction so erroneously favorable to appellant.

3. Disregard of an erroneous instruction is not in all cases a ground for the giving of a new trial the governing principles being as follows:

(a) Disregard by the jury of an erroneous instruction on a matter proper to be submitted to the jury is a ground for a new trial.

(b) Disregard by the jury of an instruction erroneously submitting a question to it for consideration, and its refusal to consider the proposition, is not ground for reversal. (Civil Code 340; Bertram v. Ebert's Admr.; 9 Ky. Law Rep. 198; Burns v. McGibben, 9 Ky. Law Rep. 441; Gausman's Exr. v. Paff, 10 Ky. Law Rep. 240; Palmer v. Johnson, 13 Ky. Law Rep. 590; 14 Ency. Pleading & Practice 786; Armstrong's Admr. v. Keith, 3 J. J. Mar. 155; Scott v. Morse, et al., 54 Iowa 732; Homuth v. Street Ry Co., 129 Mo. 629; Fleming, etc. v. L. & N. R. R. Co., 48 Ala. 527, 41 So. 683; Distad v. Shanklin, 75 N. W. (S. Dak.) 205; Barton v. Small, 62 Neb. 570; Way, Admr. v. The Chicago, &c. Ry. Co., 73 Iowa 463; Murray v. Heinze, 17 Mont. 353, 42 Pac. 1057; Cochran v. Winburn; 13 Texas 143; Welborn v. Weaver, 17 Ga. 267; Dozier v. Dozier, 20 Ga. 263; Pitts v. Thrower, 30 Ga. 212; Van Vacter v. Brewster, 1 Smedes & Marshall (Miss.) 400.)

## ADDITIONAL AUTHORITIES CITED.

Ency. Law & Procedure, vol. 9, p. 646; Hall v. Smith, 14 Bush 615; 4 Ency. Pleading and Practice 953; Newman Pleading and Practice, 2nd Ed. sec. 424 C; Civil Code 95; 1 Ency. Pleading and Practice 830, 845; Denton v. Logan, 3 Metc. 435; 1 Ency. Pleading and Practice 851; Civil Code 340; Bertram v. Eberts, Admr., 9 Ky. Law Rep. 198; Burns v. McGibben, 9 Ky. Law Rep. 441; Gausman's Exr. v. Paff, 10 Ky. Law Rep. 240; Palmer v. Johnson, 13 Ky. Law Rep. 590; 14 Ency. Pleading and Practice 786; Armstrong's Admr. v. Keith, 3 J. J. Mar. 155; Scott v. Morse, et al. 54 Iowa 732; Homuth v. Street Ry. Co. 129 Mo. 629; Fleming, etc. v. L. & N. R. R. Co., 148 Ala. 527, 41 So. 683; Distad v. Shanklin, 75 N. W. (S. Dak.) 205; Barton v. Small, 62 Neb. 570; Way, Admr. v. The Chicago, &c. Ry. Co., 73 Iowa 463; Murray v. Heinze, 17 Mont. 353, 42 Pac. 1057;

Cochran v. Winburn, 13 Texas 143; Welborn v. Weaver, 17 Ga. 267; Dozier v. Dozier, 20 Ga. 263; Pitts v. Thrower, 30 Ga. 212; Van Cacter v. Brewster, 1 Smedes & Marshall (Miss). 400.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

The Board of Education of the Methodist Church owns an office building in Louisville known as the "Kenyon Building." It was six stories in height, and the board desired to have it raised and made eight stories in height. Looking to this end, it employed architects to prepare plans and specifications for the desired work. Having secured the plans and specifications, it received bids from various contractors on the work in accordance with the plans and specifications. The bids received were for the entire work. Among the bidders who bid upon the work was E. P. Lynch, and he was the successful bidder. When he was making his estimate preparatory to bidding, he took from different contractors in particular lines of work bids for the parts of the work falling within their respective lines. Among those from whom he took bids was the Snead Architectural Iron Works, which bid for the structural steel work embraced in the contemplated improvement. After the contract had been awarded to Lynch, a dispute arose between the Snead Architectural Iron Works and Lynch as to whether or not the bid submitted by the Snead Architectural Iron Works had been accepted by Lynch. This dispute finally culminated in the institution of a suit for damages on the part of the Snead Architectural Iron Works against Lynch and the Board of Education of the Methodist Church, in which the plaintiff sought to recover of the defendants damages which it alleged it had sustained by

reason of its having been deprived of an opportunity to carry out its contract and supply the necessary structural steel for the building. The trial court held that no case was made out as to the Board of Education of the Methodist Church, and a peremptory instruction was given the jury to find in its favor, which was done, and no appeal has been prosecuted from that judgment. The defendant Lynch in his answer joined issue with the plaintiff upon every material allegation of the petition, so that the question which was tried out in the lower court was whether or not the plaintiff had entered into a contract with the defendant, by the terms of which it was to supply the necessary structural steel at a designated price. Plaintiff contended that it had entered into an oral contract with the defendant, by the terms of which it was to supply all of the structural steel called for in the plans and specifications for the alteration of the Kenyon Building for the sum of $9,969; whereas the defendant contended that, while it was agreed and understood between him and the plaintiff that the plaintiff was to furnish the necessary structural steel for the price named, it was further agreed that their contract was to be reduced to writing, and the plaintiff was to execute a good and sufficient bond to guarantee the performance of its contract according to terms; that, although he frequently requested plaintiff to sign the contract, as per their agreement, and execute the required bond, it steadfastly failed and refused to do so, and that, after he had thus endeavored to procure the execution of the contract and bond according to their understanding for about two months, he was compelled to and did make other arrangements, and notified plaintiff that he had done so. On the issue of contract or no contract the case

was tried before a jury, which returned a verdict in favor of plaintiff for $2,000, and the defendant appeals.

Two grounds are relied upon for reversal, first, that the court did not properly instruct the jury; and, second, that the verdict is against the law as given by the court. Upon the trial the court gave the following instructions:

"(1) If you believe from the evidence that after the Snead Architectural Iron Works made its bid to the defendant, E. P. Lynch, to do certain work in connection with the improvements at the Kenyon Building for a certain specified price, and that there was an acceptance of that offer by the defendant Lynch, then the law of this case is for the plaintiff, and you should so find, unless the acceptance was made with the understanding between the parties that the work was to be done in a certain stipulated time, or that after that acceptance a contract between them should be put in writing and signed by the parties, or a bond should be executed by the Iron Works to Lynch. Now, if you believe any of those stipulations or terms were understood and agreed to between the parties, and the plaintiff, the Snead Architectural Iron Works, failed to do those things or any one of them, if it had agreed to it, then the law of this case is for the defendant, and you should so find.

"(2) I further instruct you, gentlemen, that if you believe from the evidence that there was an agreement between these parties that the work should be done, and there was no stipulation as to the time within which it was to be done, then the Snead Architectural Iron Works had a reasonable time within which to do the work; but if there was a stipulation as to the time, and they failed to do the work within

that time or to proceed diligently to do the work within that time, then they cannot recover.

"(3) I further instruct you, gentlemen, that although you may believe from the evidence there was an agreement, and although you may believe from the evidence that there was a stipulation as to the time within which the work was to be done, yet if you further believe from the evidence that, before Lynch proceeded to have the work done by others than the plaintiff, the plaintiff notified Lynch that it desired that he should procure the materials and work from other sources, and notified him or stated to him that they did not regard that they had a contract with him to do the work then they cannot recover for his proceeding to do the work through others and not through them.

"(4) I further instruct you, gentlemen, although you may believe from the evidence that the Snead Architectural Works did agree that the work should be done within a certain stipulated time, and although you may believe from the evidence that they failed to do the work or to complete the work within that time, yet if you further believe from the evidence that they ceased in their preparation or progress of doing the work by reason of a notification from Lynch, the defendant, that he would not take their work or would not permit them to proceed with the work, then the delay on their part or failure on their part to comply with the contract as to the time, as to the three months, would not relieve Lynch of liability.

"(5) I further instruct you that, if you find for the plaintiff, you will award the plaintiff such sum in damages as you believe from the evidence will reasonably and fairly compensate them for such loss or

damage as you believe from the evidence they sustained by reason of the breach of contract, if it was breached by Lynch, and in so finding you will ascertain from the evidence and find the amount of money paid out by plaintiff for labor in an effort to carry out the contract, if they did so make an effort or spend money; second, the difference, if any, between the expense of the material in September, 1905, and the market value at the time Lynch refused to receive the material, if he did so refuse; third, the difference between the cost price of the castings and the market value of the same after Lynch proceeded to have the work done by others; fourth, the premium paid by plaintiff for surety bonds; fifth, the reasonable profit that you believe from the evidence, if any, the plaintiff would have realized by doing the work at the price contracted, if there was a contract; and, sixth, the market value of any old material in the Kenyon Building, which you may believe from the evidence would belong to the plaintiff, if it did the work, your verdict in all not to exceed the sum of $6,000, the amount claimed in the petition. If you find for the defendant, you will say so by your verdict and no more."

Appellant complains that the jury in arriving at their verdict wholly disregarded instruction No. 1, and returned their verdict in favor of plaintiff in spite of it. It is urged by counsel for appellant that, without entering into a consideration as to whether or not this instruction properly presented the law as warranted by the facts proven, nevertheless it was the law of this case, and in disregarding it and returning a verdict in favor of plaintiff as they did the jury found contrary to the law, and that, for this reason, the judgment predicated upon their verdict

should be reversed and a new trial awarded.   On the
other hand, it is claimed by plaintiff's counsel that
this instruction did not fairly present the law of the
case, as warranted by the facts, but that as the jury,
even though not properly instructed, reached a rea-
sonably fair and just conclusion, their verdict and
finding should not be disturbed.   The greater part
of the briefs of opposing counsel is devoted to a con-
sideration of this question.   The defendant did not
except or object to this instruction, nor is his coun-
sel now objecting to same, but his complaint is that
the jury disregarded this instruction.   Plaintiff did
object to the qualifying clause of this instruction, for
the reason that this issue was not presented in the
pleadings, and should not have been embodied in the
instruction, but that the jury should have been con-
fined to a consideration of the naked question as to
whether or not the contract was entered into as
alleged by plaintiff, and as denied by the defendant.

Section 340, subsec. 6, Civ. Code Prac. makes one
of the grounds upon which a new trial may be granted
"that the verdict or decision is not sustained by
sufficient evidence, or is contrary to law."   An ex-
amination of the authorities discloses the fact that
courts of last resort of the various states are not by
any means harmonious in the construction which they
have placed upon similar code provisions, and there
is, at least, an apparent lack of uniformity upon this
point in the decisions in our own state.   The superior
court in the cases of Gausman v. Paff. 10 Ky. Law
Rep. 240, Palmer v. Johnson, 13 Ky. Law Rep. 590,
Burns v. McGibben, 9 Ky. Law Rep. 441, and Bert-
man v. Ebert's Adm'r, 9 Ky. Law Rep. 198, held
that, where a verdict is sought to be avoided on the
ground that it is contrary to law, the complaint re-

lates to the law as given by the court in its instructions to the jury, and not as it should have been given, or, in other words, these decisions hold that where a new trial is sought on the ground that the verdict is contrary to law, the "law" here referred to means the "law" as declared or given by the court, and not as it should have been given; that, even though the court was in error and failed to give the law correctly, nevertheless the jury was bound by the "law" as given, and, if their verdict was contrary to the "law," this fact would authorize a reversal of the case, and the granting of a new trial. And in the case of Curran v. Stein, etc., 110 Ky. 99, 60 S. W. 839, 22 Ky. Law Rep. 1575, this court said: "It is insisted for appellant that the court erred in giving the jury a peremptory instruction, or in interfering with the freedom of their deliberation by requiring them to return a verdict which they were unwilling to render. There was no error of the court in requiring the jury to obey his instructions. The peremptory instruction of the court to the jury, like any other order the court may make in a case, must be obeyed. * * * To hold that the jury may disobey the peremptory direction of the court would be to vest the jury with power to review the decisions of the court on the law of the case." As opposed to this idea, this court in the case of Armstrong v. Keith, 3 J. J. Marsh. 153, 20 Am. Dec. 131, upheld a verdict which was admittedly contrary to "law" where the instruction or law, as given by the court, was erroneous, and said that the finding of the jury, under such circumstances, was sufficient to justify a final judgment. In that case the court instructed the jury to find for the defendant. The jury disregarded the instruction, and found for the plaintiff. The trial court set aside the verdict and

granted a new trial, and on the new trial the jury
found for the defendant, and upon appeal here it was
held that the lower court had erred in giving a per-
emptory instruction for defendant to the first jury,
and had erred in setting aside the first verdict, and
the judgment in favor of the defendant was therefore
reversed, and the case remanded, with directions to
enter a judgment in conformity with the first verdict
in favor of the plaintiff.  In upholding this finding of
the trial jury, this court laid down a rule apparently
antagonistic to that adopted and followed with ap-
proval in the several cases to which we have referred
as decided by the superior court and the case of
Curran v. Stein, above referred to; but we think this
conflict more apparent than real, for, while this court
refused to sustain the lower court in granting a new
trial because the verdict was contrary to the "law"
as given, it distinctly said that "the jury should con-
form to the instructions of the court upon matters
of law."  This opinion was written in 1830.  The
opinions of the superior court, from which we have
quoted, were written years thereafter, and the learned
judges who constituted that court evidently did not
regard the case of Armstrong v. Keith as declaring
a different principle from that announced in their
opinions.  This is equally true as to the case of Cur-
ran v. Stein.  The facts in Armstrong v. Keith prac-
tically warranted a peremptory instruction for the
plaintiff, "for," says the court in speaking of the evi-
dence, "every view which we have taken leads to the
conclusion that the plaintiff's intestate was not a
mere volunteer; and therefore the court erred in
giving the instruction to find as in case of a nonsuit.
The verdict of the jury was therefore correct, and
ought not to have been set aside for the purpose of

granting a new trial." As the jury, in the language
of the court, "penetrated by the sense of the injustice
likely to result, rejected and disregarded the instruc-
tion of the court, and found a verdict for the plain-
tiff," which was in accord with the right and justice
of the case, as appears from the evidence, which was
uncontradicted, this court directed a judgment en-
tered on the verdict returned by the jury on the first
trial. In so doing the court was applying that other
well-recognized and most useful rule of procedure, to-
wit, that no case should be reversed for immaterial
or unprejudicial errors. The court was evidently of
the opinion that any verdict returned in favor of the
defendant would have been a gross injustice to the
plaintiff on the facts presented, and hence a new trial
could, under the facts proven, have been productive
of no good, but would merely have delayed the ends
of justice and placed upon the litigants additional
cost, and, in this view of the case, even though the
verdict was contrary to the law, the court was war-
ranted in refusing to uphold the ruling of the trial
judge in setting it aside. Under this view of the
case Armstrong v. Keith is not out of harmony with
the later decisions in this state.

That this court had, even prior to 1830, when the
opinion in the case of Armstrong v. Keith was de-
livered, committed itself to the doctrine that the
jury may not disregard the "law" as given by the
court, and decide on the facts to the contrary, not-
withstanding the instruction, while not directly de-
cided, is incidentally established. In the case of
Smith v. Morrison, 3 A. K. Marsh, 81, in pass-
ing upon the ruling of the trial court in stopping
Smith's counsel from arguing a proposition of law
seemingly contrary to that given by the court, this

court said: "In thus restraining counsel we are of opinion the court acted perfectly correct. After having obtained from the court an opinion on the legal import of the settlement, a decent regard for that opinion would seem to forbid the same matter from being again canvassed before the jury." When Armstrong v. Keith is read in connection with the older opinion of Smith v. Morrison, and the several opinions of the superior court above referred to, and Curran v. Stein, it is evident that the reversal in that case was rested upon a rule of practice in this court, which is now authorized by section 134 of the Civil Code of Practice, that, "no judgment shall be reversed or affected because of immaterial errors or defects in the proceeding." And this conclusion is emphasized when it is considered that in Armstrong v. Keith the court expressly said that the jury should conform to the instructions of the court upon matters of law. Thus the apparent conflict in the authorities in this state upon this subject is explained and the opinions harmonized. The decisions of other courts of last resort upon this point are not harmonious, but the decided weight of the authorities is to the effect that, where a statute authorizes a reversal upon the ground that the verdict is contrary to the "law," the "law" referred to means the "law" of that case as given by the court, whether right or wrong. The Supreme Courts of California, Iowa, Montana, Nebraska, New York, Pennsylvania, South Carolina, Alabama, South Dakota, and England have held that, where a verdict is returned contrary to "law" as given by the instructions of the court, it is such a verdict as will authorize the trial court to set it aside because contrary to law. The "law" referred to in the opinions under consideration is invariably held to mean the "law" as

given by the court, and not as it should or might have been given. On the other hand, the Supreme Courts of Georgia, Mississippi, and Texas have taken a contrary view, and, where the verdict is in harmony with what the court conceives to be the "law" should have been, rather than in harmony with the law as given by the trial judge, the finding of the jury has not been disturbed.

In the case of Murray v. Heinze, 17 Mont. 353, 42 Pac. 1057, 43 Pac. 714, the court had under consideration the correctness of the ruling and judgment of the trial court because it was contrary to the "law" as given by the court. Upon appeal it was urged that this was error because the instruction or "law" as given by the trial court was itself erroneous. In disposing of this question the court said: "But counsel for the appellant contend that, the instruction being erroneous, the court erred in setting aside the verdict, because of the fact that the jury wholly disregarded it. The question presented is: Had the jury the right to disregard the instructions of the court if erroneous? This is a most important question in the administration of the law. It must be conceded that there is a conflict of authority on this question. Counsel for the appellant cite a number of authorities in support of their claim that the jury may disregard the instructions of the court, if erroneous, if the verdict is otherwise in accord with the law, and that it would be error in the court under such circumstances to set aside the verdict. It seems from the authorities cited by appellant that Kentucky, Georgia, Texas, and some other states have so held. A number of the cases cited by counsel for appellant are not exactly in point; that is, they are cases in which the jury did not seemingly disregard the erroneous instructions upon

vitally material issues in the case, and where the verdict was in conformity with the charge of the court, taken as a whole. But it must be confessed that some of the authorities cited hold that the jury have a right to disregard erroneous instructions of the court, and that the verdict should not be set aside in such cases if in accord with the correct law. * * * But let it be conceded that there is a conflict of author-- ities upon the question under discussion, or let us suppose that it is a new question, without any adjudications or authority in either event; what course should this court pursue? It has always been held in this jurisdiction that it was the sole province of the jury to determine questions of fact. It has been uniformly held that it was error for the court to invade this special province of the jury by even commenting on the evidence. State v. Sullivan, 9 Mont. 174, 22 Pac. 1088, and authorities cited. Our system of practice is certainly based upon the theory that it is the province of the jury to determine facts, and that of the court to determine and declare the law in all cases, except in prosecutions for libel. 'The jury, under the direction of the court, shall determine the law and the facts.' State Const. art. 3, section 10. From this constitutional clause it seems plain that the jury have no right to determine the law in any other case. 'Expressio unius est exclusio alterius.' This is the first time it has been seriously contended in this court that the jury have the right to determine the law in an ordinary suit at law and to absolutely disregard the instructions of the court on the ground that, in the opinion of the jury, the instructions of the court are erroneous. If the contention of the appellant is to be upheld, what may we not anticipate ˮs the result in the administration of the law in this

state? If the jury may rightfully invade the province of the court, why may not the court retaliate by invading the province of the jury in determining questions of fact? As counsel for the respondent suggest, if the contention of appellant is correct, then logically there is an appeal in all cases upon questions of law from the trial court to the jury. And, as counsel for respondent further suggest in their argument, if the jury may determine the law, an attorney arguing a case may say to the jury: 'The court will charge you that the law is so and so, but I say to you the court is wrong. You, the jury, are the judges of the law, and may determine it for yourselves.' Would any court permit such an argument to a jury? Certainly not. But, if the jury are the judges of the law, why should a court prohibit such an argument to them? If a juror should state upon his voir dire that he would not be governed by the law as declared by the court, if he thought the instructions erroneous, nobody would doubt that he would not be permitted to sit in the case. Yet, if he has the right as a juror to determine the law, we do not see why he should be challenged for asserting that right. If the contention of appellant is correct, the time of this court in hearing future appeals will be devoted to determining whether the court or the jury were right in their views of the law in the trial of the cause in the lower court. Authority or no authority, we cannot give our sanction to a practice that would lead to such results. Such a course would ultimately result in overturning our system of keeping separate and distinct the powers and duties of courts and juries, confining each to its own proper province, in the degradation of the courts, and confusion and chaos in the administration of the law.''

And, in the case of Emerson v. County of Santa Clara, 40 Cal. 543, the court, in passing upon a similar question, said: "It matters not if the instruction disobeyed be itself erroneous in point of law, it is nevertheless binding upon the jury who can no more be permitted to look beyond the instructions of the court to ascertain the law than they would be allowed to go outside of the evidence to find the facts of the case."

And in the case of Barton v. Shull, 62 Neb. 570, 87 N. W. 322, the Supreme Court in passing upon a similar question, said: "Without at the present time discussing the correctness of the instructions, the rule is that it is the duty of the jury in all cases to follow the instructions given them by the court whether correct or not; and, if they fail to do so, the verdict will be deemed to be contrary to law, and should be set aside and a new trial ordered. The reasons for the rule are obvious. Any other would lead to endless confusion, sanctioning utter disregard of the court's opinion of the law applicable to the pleadings and the evidence, and render its instructions entirely impotent, except when willed otherwise by the jury. A refusal or failure to follow the instructions of the court is sufficient ground for setting aside the verdict and granting a new trial."

And in Way v. Chicago & Rock Island Railway Co., 73 Iowa, 463, 35 N. W. 525, the court said: "We will not inquire whether the instruction is correct or not. It was given as the law of the case, and should have been respected by the jury. A verdict which has been found against the instructions of a court should be set aside, even though the disregarded instructions should be erroneous." To the same effect are Bunten v. Mutual Ins. Co., 4 Bosw. (N. Y.) 254; Flemming v. Marine Ins. Co., 4 Whart. (Pa.) 59, 33 Am.

Dec. 33; Dent v. Bryce, 16 S. C. 1; Fleming v. L. &
N. R. R. Co., 148 Ala. 527, 41 South. 683; Wood v.
Cox, 84 English Common Law, 280. In this case the
Chief Justice, Sir John Jervis, said: "Without dis-
cussing the merits of the case or the propriety of the
directions of the presiding judge, I think the verdict
cannot be sustained. The undersheriff directs the
jury to find for the plaintiff, telling them there is no
evidence to support the plea, and they persist in find-
ing for the defendant. There must be a new trial."
The authorities which we have cited are represent-
ative cases in their respective jurisdictions bearing
upon this question. As opposed to the views therein
expressed, the Supreme Courts of Texas, Georgia, and
Mississippi, as above indicated, have taken a con-
trary view, but the reason for the rule announced in
these several cases cited by counsel for appellee in
support of his contention is far from satisfactory,
and the conclusion reached is opposed to both the
theory and spirit upon which our system of jurispru-
dence is based, and is overwhelmed by the weight of
authority in other jurisdictions.

After a full consideration, we adhere to the rule
inferentially declared in Smith v. Morrison, posi-
tively announced in Armstrong v. Keith, and subse-
quently followed by the superior court in the several
opinions to which we have referred, and by this court
in the later case of Curran v. Stein, that it is the duty
of the trial jury to "conform to the instructions of
the court upon matters of law." In other words,
that it is the exclusive province of the court to de-
termine questions of law, and that of the jury only to
apply the facts proven to the law as given by the
court; and, when it is stated that the verdict is con-
trary to "law," reference is had to the law as given

by the court, and not as it might or should have been given.

Applying this principle to the case at bar, it is plain that the jury in arriving at their verdict disregarded instruction No. 1. Counsel for appellee practically concedes this, but urges that the verdict should be permitted to stand because instruction No. 1 was erroneous, and he offers in support of this argument the case of Armstrong v. Keith. But, as herein indicated, the case of Armstrong v. Keith is not applicable, for the opinion in that case rested upon a different proposition. This must be so else that opinion is entirely illogical; for the court distinctly said that it was the duty of the jury to conform itself to the "law" as given by the court; hence as the opinion recognizes this principle, but in spite of it, decided the case to the contrary, it must have been upon some other ground. However, a careful analysis of instruction No. 1 will show that the court did not err in giving this instruction, but, on the contrary, that it fairly presented the law of the case as warranted by the pleadings and proof. The question, it is true, was contract or no contract, and this was in fact the question submitted by the court.

Appellee claims that the contract was completed on the 21st of July, whereas appellant contends that, while the terms of the contract were agreed upon at that date, they were never in fact complied with, and, if they were not, then this idea had to be brought home to the jury to enable them to arrive at a just and proper solution of the question under consideration. In apt and appropriate language the court conveyed this idea to the jury in instruction No. 1. It is not subject to the criticism which counsel for appellee is disposed to place upon it. The overwhelm-

ing weight of the evidence offered by appellee supports the contention of appellant that the terms which were made a condition prerequisite to the closing or completion of the contract were never complied with. It is true there is some evidence to the contrary, and, under the scintilla rule, this made it necessary that the case be submitted to the jury, and the court did not err in overruling appellant's motion for a peremptory instruction.

The court told the jury in instruction No. 4 that, although they might believe from the evidence that appellee failed to do the work or to complete it within the prescribed time, yet, if they further believed from the evidence that appellee ceased in its preparation or progress of doing the work by reason of a notification from appellant that he would not take the work or permit it to proceed with the work, then the delay or failure on the part of the appellee to comply with the contract as to time would not relieve appellant of liability. This was error because it did not present for the consideration of the jury the idea which should permeate each instruction, to wit, that appellee had no right to recover in any event unless the terms of the contract, as agreed upon, were complied with—that is, the conditions, if any, which were made a prerequisite to the closing of the contract, were complied with—and hence the jury should have been told in instruction No. 4 that if they believed that appellant had a contract with appellee, and then thereafter, without justification, notified appellee that he would not receive its work or permit it to be used in the building, then appellant could not escape liability because of any delay on the part of appellee. Instruction No. 4 was practically a peremptory instruction to find for the plaintiff because

defendant admitted that he had notified plaintiff that he would not receive the material when part of it was tendered in September, but this notification, according to his testimony, was given on the idea that because of plaintiff's refusal to execute the bond no contract had been entered into. This instruction was highly prejudicial, and no doubt exerted a controlling influence over the jury since their verdict seems to have been based upon it. A jury cannot be expected to arrive at a just and fair conclusion when the law, which is to serve as their guide, is not correctly given; and a verdict cannot be said to be against the evidence when prejudicial errors, either in the admission of evidence or in the rulings of the trial court, have been committed during the progress of the trial.

For this reason, we refrain from passing upon the complaint of appellant that the verdict is against the evidence, but reverse the judgment solely upon the ground that the court erred to the prejudice of appellant in giving instruction No. 4 in the form in which it was given, and remand the case for further proceedings consistent herewith.