## Refiners Oil Corporation v. Bell.

(Decided March 13, 1936).

JOHN K. TODD and CHAS. G. MIDDLETON for appellant.

H. B. KINSOLVING, JR., and GILBERT & DAVIS for appellee.

OPINION OF THE COURT BY JUDGE STITES—Affirming.

This is an appeal from a judgment of the Shelby circuit court based on the verdict of a jury in the sum of $1,048.04, in favor of the appellee, J. B. Bell. Appellant, Refiners Oil Corporation, was the plaintiff below. It filed its petition against Bell alleging that on June 16, 1931, it entered into a commission and agency contract with him for the distribution, handling, and storage of petroleum products at Shelbyville and other points designated with a schedule of commissions on the different products at varying rates, and providing that Bell should be responsible for all goods intrusted to him and account for same. This was admitted by Bell. It was further alleged, however, that Bell failed to account for shortages in gasoline, and that the shortage on gasoline, kerosene, alcohol, and greases aggregated $2,678.79, against which he was entitled to a credit of $1,154.47, leaving a balance due of $1,524.32. A further sum was claimed covering sales made by Bell on credit to customers not approved by appellant. By stipulation it was admitted that the balance due on this score was $325.37.

Bell filed an answer and counterclaim, in which he denied liability for the claimed shortage, and asserted that it covered matters for which he was not responsible. By his counterclaim he asked for judgment against appellant for the sum of $1,154.47, which it had credited against the shortage against his will, and which should have been credited against certain notes of his, held by appellant, in the sum of $600, leaving the net amount prayed $544.47. By an amended answer

and counterclaim, Bell asserted that appellant had wrongfully withheld certain commissions due him for deliveries of gasoline, and he raised his prayer for judgment to the sum of $1,297.47.

At the close of the evidence, the court gave four instructions. By one instruction, to which no exception was taken, the jury were peremptorily directed to find for Bell in the sum of $829.10, the difference between the credits of $1,154.47 and the $325.37 admitted by stipulation to be due from him to the company. Another instruction permitted the jury to find for him up to $491.52 on that part of his counterclaim covering the commissions alleged to be due on certain deliveries of gasoline. Against the findings on these two items, the jury were told to set off such amount as they should find for appellant on its claim for shortages, not to exceed $2,678.79, less any shortage they might believe from the evidence was due to leakage from defective tanks. None of these instructions is complained of here, and we recite their substance merely to indicate the manner in which the issues were submitted. The only questions urged by appellant here are (1) that the verdict is not sustained by the evidence, and is contrary to the law and the evidence; and (2) that the damages are excessive, and appear to have been given under the influence of passion and prejudice. We confine our investigation to the points argued.

It seems clear that the transaction between appellant and appellee amounted to a bailment, and not a sale, and that under the terms of his contract appellee was responsible as a bailee for hire for the goods intrusted to him. A necessary element of this liability must, of course, be that the goods were actually delivered to the bailee. Appellee testified that he received his gasoline from tank cars, shipped principally from Louisiana, and that about eight out of ten cars were short. He was to some extent confirmed in this by the testimony of an employee of the Louisville & Nashville Railroad Company, who stated that he had observed the shortage on several occasions. No attempt was made by either party to show the extent of these claimed shortages. There was likewise a considerable amount of testimony concerning leaks in the equipment in which the gasoline was stored, and ap-

pellant does not question the ruling of the trial court to the effect that losses occasioned by leakage were excusable. No claim is made that these losses were in any way due to negligence on the part of appellee. Appellant points out that most of the serious leaks established were shown to have occurred during a period other than the time complained of here, but this does not include all of the leaks or seepages, nor does it account for the shortages in deliveries, and we cannot say that the verdict is not sustained by the evidence or that it is flagrantly against the evidence, even though we might ourselves have reached a different conclusion from that determined by the jury. The issue as framed by the instructions presented a question within the province of the jury, and, under the circumstances, we are not authorized to disturb it. Lynch v. Snead Architectural Iron Works, 132 Ky. 241, 116 S. W. 693, 21 L. R. A. (N. S.) 852. It was for the jury to determine whether they would believe the witnesses for appellant or the witnesses for appellee.

We are likewise unable to say that the verdict is excessive or appears to have been given under the influence of passion or prejudice. To the extent of $829-.10, the jury were peremptorily told to find for appellee. That they added the sum of $218.94 to this could hardly be the result of passion or prejudice, and the jury were certainly at liberty to disregard appellant's claim if they did not deem it meritorious.

Judgment affirmed.