## Yellow Poplar Lumber Company v. Bartley, By et al.

(Decided May 20, 1915.)

### Appeal from Pike Circuit Court.

1.  Master and Servant—Commanding Inexperienced Servant Into Place of Danger.—The master is responsible in damages for injuries sustained by a youthful and inexperienced servant who was injured in executing an order which the master knew or ought to have known involved danger.

2.  Master and Servant—Assumption of the Risk—Obeying Command of Master.—Where a servant is injured while and by reason of his executing an order of the master, he did not assume the risk unless the danger was appreciated by him and was such that a person of ordinary prudence would have refused to encounter it.

3.  Master and Servant—Fellow Servant—Ordinary Negligence of a Superior Servant.—The rule that for personal injuries not resulting in death, recovery may be had for the negligence of a superior servant only when his negligence is gross, is not applicable when the superior servant is negligent in respect of those non-delegable duties from the due performance of which the master cannot relieve himself.

4. Trial—Verdict Disregarding Instructions.—Where the verdict is contrary to the instructions of the court, a new trial will be granted, be the instructions right or wrong.

S. S. WILLIS, HAGER & STEWART and YORK & JOHNSON for appellant.

CHILDERS & CHILDERS for appellees.

OPINION OF THE COURT BY JUDGE HANNAH—Reversing.

The Yellow Poplar Lumber Company appeals from a judgment of the Pike Circuit Court in favor of Irvin Bartley, who sued by next friend to recover damages for injuries sustained by him while in the employment of appellant company.

1. It is insisted by appellant that the trial court erred in overruling its motion for a directed verdict, made at the close of the evidence.

It appears from the record that on May 22, 1912, the Yellow Poplar Lumber Company was engaged in moving a lot of saw logs which were piled up promiscuously on the head of Craney Island in the Russell Fork of Sandy River. The pile was twenty to thirty feet high; and the water immediately surrounding it was about six feet deep, but became shallower as the river bank was approached.

The log to be extracted having been rolled down or loosened, a set of grabs would be driven into it, and a long chain attached to the grabs. Then the mules would be driven out into the river as far as practicable and hitched to the chain; and by this means the logs were being pulled from the pile, across and on to the bank of the river.

Irvin Bartley, a boy sixteen years of age, was assisting in this work. This was his first work of the kind and he had been employed only about an hour and a half when he was injured.

He testified that he was employed to "work down there and help them boys." The boys referred to were "driving grabs and rolling some logs off of the pile where they could hitch on them."

The plaintiff testified that the foreman, Daniels, was on top of the pile of logs; that the driver of the mules was engaged in pulling at a log to which the mules had been hitched, when the log became caught in some manner and the mules were unable to move it. He said:

"I kinder turned around and looked back toward Mr. Daniels, and he says, 'Loosen the log,' and throwed his hand up; and I turned around to the boy who was standing by the side of the cant-hook and told him to pitch me the cant-hook. And he pitched it, and it hit the top of the log I·was standing on, and glanced off over pretty close to this log that was hitched on. I stepped off of the log I was standing on, and waded to the end of the cant-hook, and I just picked the cant-hook up that way and aimed to set my hand on the log, and about the time I reached my hand out that way, the log turned a little, and I dropped the cant-hook and started back to the log I was first standing on; and I was in the water a little up above my knees, and I threw this foot over the log, and then I had to bring this foot over; I got this foot up and the other log came against it." His leg was broken and his ankle crushed as the result of his leg being caught between the two logs.

It further appears that the driver of the mules started the team up while Bartley was between the logs, and this is what caused the turning of the log to which the mules were hitched. It was also shown that Bartley was inexperienced in work of the character in which he was engaged.

1. It will thus be seen that the evidence for the plaintiff presented a case in which a youthful and inexperienced servant was injured as the result of executing an order·which the master knew, or ought to have known, involved danger. And this was clearly a violation of the master's duty.

It is said by appellant that plaintiff produced no evidence that the place of work was dangerous. But the conditions existing therein were fully brought out in evidence, and we think were ample justification for a belief upon the part of the jury that the place wherein the servant was directed to go was a place of peril, and that this fact was known, or ought to have been known, by the master.

Appellant further suggests that conceding that the foreman, Daniels, did give the order to loosen the log, still Bartley was not injured in doing that work. It is true that he was not engaged in an actual attempt to loosen the log when he was hurt, but he was engaged in preparations to do so, and he was present in the place where he was injured as the direct result of the com-

mand given to him by the foreman, according to his testimony. This being true, we conceive it to be immaterial that at the time of the injury he was not yet engaged in an actual effort to loosen or change the position of the log in question. He was injured while getting the cant-hook, but the cant-hook was necessary to be used in carrying out the order to loosen the log.

2. It is also insisted by appellant that the perils of the place, conceding that such there existed, were open and obvious and known to Bartley as well as to any man there, and that having been admonished of the danger, he assumed the risk.

Bartley admitted on cross-examination that when the log in question was hitched to and the first pull on it made, Daniels, the foreman, ordered them all to get out of the way. We do not believe that this was such a warning and instructing of a youthful and inexperienced servant as would operate to place him on the same footing as an adult servant, having knowledge of the danger, in respect of the assumption of the risk; but even if such be conceded to be the effect of the command in question, when Bartley later acted in obedience to the order of Daniels to loosen the log, he did not assume the risk of injury, unless the danger was appreciated by him and was such that a person of ordinary prudence would have refused to encounter it. And these are questions for the jury. Ill. Cent. R. R. v. Keeler, 84 S. W., 1167, 27 R., 305; L. & N. v. Adams, 148 Ky., 513, 147 S. W., 384.

3. It is also contended by appellant that the verdict was palpably against the evidence.

Daniels, the foreman, testified that he employed Bartley only to carry the chain back and forth from the river bank to the log pile where it would be again attached to a log, after having been used in pulling the previous log (although he also admitted that it was Bartley's duty to do such work as he was ordered to do); that before they pulled on the log in question, he told the boys to keep out of the way; that Bartley jumped off the log on which he was standing and in near the log to which the mules were attached, without any order or request from him (Daniels) to loosen the log or to do anything else in connection with it. McCown, the driver, and Wallace, a boy who was assisting in the work, both testified that if Daniels ever directed Bartley to loosen the log, they did not hear it.

There is a conflict in the evidence as to whether Daniels ordered Bartley to loosen the log; but there was sufficient evidence on this issue to take the case to the jury, and sufficient evidence to uphold a verdict; and we cannot say that the jury has rendered a verdict palpaply against the evidence.

4. Instruction No. 2 was as follows: "The court further tells the jury that if they believe and find from the evidence that the defendant's foreman, Jesse Daniels, ordered or directed the plaintiff into a place of danger to loose a log, and that said foreman knew, or by the exercise of ordinary care could have known, that said place was dangerous, and that the defendant did not know, or could not have known by the exercise of ordinary care, of the said danger, and while exercising ordinary care for his own safety, obeyed or undertook to obey said order, or direction of the foreman, and while so doing was injured by said log being suddenly or abruptly pulled or thrown again him, breaking his leg or crushing his ankle and thereby causing him to suffer pain and anguish or crippling him so that his power to earn money was depreciated, you will find for the plaintiff, unless you find for the defendant under instructions Y or Z."

Appellant contends that this instruction was erroneous in imposing liability for the ordinary negligence of the foreman; and that the rule applies that for personal injuries not resulting in death, recovery may be had for the negligence of a superior servant only when such negligence is gross. See L. & N. v. Foard, 104 Ky., 456, 47 S. W., 342, 20 R., 646; C. & O. v. Marcum, 136 Ky., 245, 124 S. W., 293; C. & O. v. Laney, 154 Ky., 39, 156 S. W., 875; Ohio Valley C. & M. Co. v. Heine, 159 Ky., 586, 167 S. W., 873.

But this rule does not apply where the servant is injured as the result of the negligence of the foreman in respect of those non-delegable duties, from the due performance of which the master cannot relieve himself. It is the duty of the master to refrain from ordering his servant into a place of danger. This is only another form of expressing the duty to provide a safe place. And this duty cannot be delegated by the master, nor need negligence in respect thereof be gross in order to form the basis of legal liability. Tradewater Coal Co. v. Johnson, 72 S. W., 245, 24 R., 1777.

5. It is also contended by appellant that the instruction above quoted is erroneous for failure to require that the injury should have resulted from the command mentioned, the negligence of which was submitted to the jury. That the negligence complained of must have been the proximate cause of the injury is, of course, elementary; but we think this criticism of the instruction ingenious rather .than meritorious. There is not a great deal of difference between the statement that a servant was injured in obeying or undertaking to obey the order of his superior, and that he was injured as the direct result of his obeying or undertaking to obey such order, where the facts are such as are here presented. However, this matter is one that may readily be remedied on another trial.

6. The defense was that Bartley, without any direction, command or suggestion upon the part of Daniels, the foreman, voluntarily, and as no part of the service for which he was employed, placed himself in the perilous position wherein he was injured.

Appellant offered instruction Y, which suggested the theory of the defense, and the court should have given a correct instruction along the lines indicated, but instead gave instruction Y as offered. It read as follows:

"The court further instructs the jury that if they believe from the evidence that the plaintiff, Bartley, was injured while he was between said logs described in the evidence, attempting to get a cant-hook, they will find for the defendant."

This instruction was equivalent to a peremptory instruction to find for defendant, as the evidence conclusively shows without the slightest contradiction that plaintiff was injured while he was between the logs attempting to get the cant-hook.

The instruction was erroneous, and appellant is not seriously insisting that it was correct; but it does insist that the verdict of the jury is squarely in disobedience of the instruction. By appellee, the suggestion is offered that appellant's contention in this respect is inaccurate for the reason that Bartley testified that he had already grasped the cant-hook when he was injured, and that therefore he was not attempting to get it; but this is a mere evasion of the mandate of the instruction.

The rule is now well settled in this State that where the verdict is contrary to the instructions of the court, a

new trial will be granted, be the instructions right or wrong.

In the case of Lynch v. Sneed Architectural Iron Works, 132 Ky., 241, 116 S. W., 693, 21 L. R. A. (N. S.), 852, the question was discussed as to whether a verdict which wholly disregards the instructions should be set aside and a new trial granted, and the court said, quoting from Murray v. Heinze, 17 Mont., 353, 43 Pac., 714:

"If the contention of the appellant is to be upheld, what may we not anticipate as the result in the administration of the law in this State? If the jury may rightfully invade the province of the court, why may not the court invade the province of the jury in determining questions of fact? As counsel for respondent suggest, if the contention of the appellant is correct, then logically there is an appeal in all cases upon questions of law, from the trial court to the jury. And, as counsel for respondent further suggest in their argument, if the jury may determine the law, an attorney arguing a case may say to the jury, 'The court will charge you that the law is so and so, but I say to you the court is wrong. You, the jury, are the judges of the law, and may determine it for yourselves.' Would any court permit such an argument to a jury? Certainly not. But, if the jury are the judges of the law, why should a court prohibit such an argument to them?"

See also St. Paul F. & M. I. Co. v. Kendle, 163 Ky., 146, in which the court said: "The case of Lynch v. Sneed Architectural Iron Works, 132 Ky., 241, 116 S. W., 693, is decisive. It contains an exhaustive review of all the authorities, and after a further consideration of the matter we are not disposed to depart from the ruling announced in that case."

The judgment is reversed.