**Bethel R. COLEMAN, Appellant,**

**v.**

**Billy STAPLES and James K. Rushing, Appellee.**

Court of Appeals of Kentucky.

Oct. 24, 1969.

John P. Hayes, Lawrence S. Grauman, Louisville, for appellant.

Chester A. Vittitow, Jr., Hogan, Taylor, Denzer & Bennett, Louisville, for appellee.

PALMORE, Judge.

Mrs. Bethel R. Coleman was injured in a head-on collision between her automobile and an automobile owned by Billy Staples and driven by James Rushing. Her suit against Staples and Rushing resulted in a verdict and judgment for the defendants, from which she brings this appeal.

The accident happened on Palatka Road in Louisville, Kentucky, between 5:00 and 6:00 P.M. on a rainy day in July of 1966. Mrs. Coleman was alone and was driving her Chevrolet in an easterly direction. Rushing, accompanied by Staples and another companion, Harvey Lucas, was driving Staples' Pontiac in the opposite or westerly direction. The road was narrow and winding. It had a blacktop surface and was slick from rain.

The photographs introduced in evidence show that the collision took place at a point in a reverse "S" curve where Mrs. Coleman had just rounded a turn to her right and Rushing was coming out of a turn to his right and was about to enter the curve from which Mrs. Coleman had emerged. Immediately after the accident both cars came to rest in the east-bound traffic lane, Mrs. Coleman's side of the road, the Staples-Rushing car being partially off the pavement. There was not enough physical evidence on the surface to indicate the exact point of impact or respective positions of the two vehicles in relation to the center of the road at the moment of the collision. There was no evidence of excessive speed by either.

Mrs. Coleman had no recollection of the accident. Staples was looking off and could not tell how it happened or where the two cars were with respect to the middle of the road immediately beforehand. Rushing did not testify, either by deposition or at the trial. The only witness able to give an eyewitness version of what took place was Lucas, the other passenger in the Staples-Rushing vehicle, who testified by deposition.

Lucas said that as they approached the scene of the collision Rushing was driving wholly in his proper traffic lane; when Mrs. Coleman's car came into view it "was over on our side pretty much * * * way past the middle * * * over halfway I mean;" there was a tree-lined ditch or gulley to the right; Rushing veered to the left but at the same time Mrs. Coleman also turned back to her right; and the cars collided on Mrs. Coleman's side of the road. He could not say whether any part of either car came to rest on the west-bound half of the road.

At one point in his testimony, in reply to a question as to which side of the road the Staples-Rushing car was on when the two cars came together, Lucas said: "We was both on the left side of the road." Later, he qualified this statement to the extent of estimating that although he could not be certain, "I'm pretty sure we were mostly on the left side." Neither he nor any other witness testified that any part of the Coleman vehicle was not entirely in the east-bound lane (Mrs. Coleman's side) at the time of the collision.

Mrs. Coleman's first contention is that she was entitled to a directed verdict under the principles stated in Stark's Adm'x v. Herndon's Adm'r, 292 Ky. 469, 166 S.W.2d 828 (1943), since the physical evidence indicates that the accident took place entirely on her side of the road. The answer to that theory is that there was no witness in the Stark-Herndon case to explain away the inferences raised by the bare physical circumstances, whereas in this case the testimony of Lucas raises two defenses, contributory negligence and sudden emergency.

Had the trial court properly instructed on either of these two defenses the verdict would be unassailable. Unfortunately, however, appellees did not request a sudden emergency instruction and, though they did request one on contributory negligence, the trial court did not give it. The instructions the trial court did give are the vital factor in considering Mrs. Coleman's next contention, which is that the verdict is contrary to the evidence.

Mrs. Coleman's motion for a directed verdict having been overruled, she offered the next best thing, an instruction under which a perspicacious jury would have no alternative but to find in her favor. Its basic content was that if Mrs. Coleman's car was not wholly on her side of the road *at the time of the collision*, Staples and Rushing should win, but if the Staples-Rushing car was not wholly on its side of the road, Mrs. Coleman should win *unless* neither car was wholly on its side, in which event Staples and Rushing should win. Under this instruction Mrs. Coleman could have been contributorily negligent only if she was in foul territory at the moment of the impact, whereas if Lucas' testimony is true it was her negligence in being on the wrong side immediately beforehand that induced or contributed to the accident.

In substance, the instruction on liability as given by the trial court set forth the same criteria contained in the one offered in behalf of Mrs. Coleman. Thus the defendants, Staples and Rushing, could win only if (1) Mrs. Coleman failed to keep her car to the right side of the road *"and her automobile was not wholly on its right-hand side of the highway at the time of the collision"* (emphasis ours), or (2) if neither of the two vehicles was wholly on its side of the road at the time of the collision. Reduced to more forthright terms, the instruction simply said that Mrs. Coleman was entitled to a verdict if her car was entirely on its side of the road, otherwise Staples and Rushing were entitled to a verdict. Obviously, then, since there was not a shred of evidence that Mrs. Coleman's car was not wholly on its proper side of the road at the time of the collision, there was no way for Staples and Rushing to win and no way for Mrs. Coleman to lose if the jury followed the instruction.

"Under this evidence, the instruction was equivalent to a peremptory to find for appellant. Clearly, then, the verdict is contrary to the law of the case, and ordinarily that is sufficient reason for reversal. But if the instruction is more favorable to the appellant than it was entitled to under the evidence, and we believe such to be the case here, ought the judgment to be reversed? As above indicated, the instruction amounted to a peremptory; yet the jury disregarded it. It is the peculiar function of the court to determine the law of the case, and, in the application of that law, the jury will determine the facts; but here we have a case where the jury not only determined the facts, but the law also. If the jury had disregarded a peremptory instruction framed in the usual form, can there be any doubt as to the duty of the court, and what would have been his ruling under the circumstances? Can it be said that this jury would have given appellant a fair trial under instructions less favorable to it, when they refused to find for it under an instruction which was equivalent to a peremptory? It follows necessarily that the verdict should be set aside as contrary

to law, and because the jury was swayed by passion and prejudice." St. Paul Fire & Marine Ins. Co. of St. Paul, Minn. v. Kendle, 163 Ky. 146, 173 S.W. 373, 375 (1915).

See also Yellow Poplar Lumber Co. v. Bartley, 164 Ky. 763, 176 S.W. 201, 204 (1915), in which the same question was thus treated:

"Appellant offered instruction Y, which suggested the theory of the defense, and the court should have given a correct instruction along the lines indicated, but instead gave instruction Y as offered. It read as follows:

" 'The court further instructs the jury that if they believe from the evidence that the plaintiff, Bartley, was injured while he was between said logs described in the evidence, attempting to get a cant hook, they will find for the defendant.'

"This instruction was equivalent to a peremptory instruction to find for defendant, as the evidence conclusively shows without the slightest contradiction that plaintiff was injured while he was between the logs attempting to get the cant hook. The instruction was erroneous, and appellant is not seriously insisting that it was correct; but it does insist that the verdict of the jury is squarely in disobedience of the instruction. By appellee, the suggestion is offered that appellant's contention in this respect is inaccurate for the reason that Bartley testified that he had already grasped the cant hook when he was injured, and that therefore he was not attempting to get it; but this is a mere evasion of the mandate of the instruction.

"The rule is now well settled in this state that, where the verdict is contrary to the instructions of the court, a new trial will be granted, be the instructions right or wrong." 176 S.W. at p. 204.

As explained in the opinions from which we have quoted, the question here is not simply whether the evidence would have supported *a verdict* for Staples and Rushing (clearly it would), but whether it supports the verdict returned under the instructions given by the trial court. It does not. Hence it is contrary to law. Though Mrs. Coleman's brief takes no cognizance of this technical distinction, we think it sufficiently preserves the ground, asserted in support of her motion for a new trial, that the verdict "appeared to have been given under the influence of passion or prejudice and in disregard of the evidence presented at the trial or [sic] the instructions of the Court."

There is one other claim of error which needs mention lest it arise again upon a new trial. The witness Lucas, under cross-examination while giving his deposition, admitted that in 1956, when he was 15 years old, he was involved in the theft and removal of an automobile across the state line from Missouri to Arkansas and received a 2-year suspended sentence in a federal court. He did not know what a felony is, nor whether the matter had been handled in a juvenile or adult proceeding. In the absence of a copy of the record of conviction the trial court refused to allow the jury to hear this testimony.

18 U.S.C.A. §§ 5031 and 5032 define a juvenile as a person who has not reached his 18th birthday and provide that unless the Attorney General expressly directs otherwise a juvenile alleged to have committed a crime not punishable by death or life imprisonment shall be proceeded against as a juvenile delinquent and not by a criminal prosecution. A juvenile delinquency proceeding results in the adjudication of a status rather than conviction of a crime. Cotton v. United States (10 Cir.1966), 355 F.2d 480, 481. Cf. KRS 199.208(5), which expressly so provides with reference to juvenile proceedings in this jurisdiction.

Without further information regarding the 1956 proceeding against Lucas, the evidence was and is inadmissible. This particular question was not considered in

Smith v. Commonwealth, 285 Ky. 273, 147 S.W.2d 701 (1941).

The judgment is reversed with directions for a new trial.

All concur.