## Barney v. Jolly Hoop Company.

(Decided November 9, 1916.)

### Appeal from Fulton Circuit Court.

1. **Appeal and Error—Reversal of Judgment—Verdict Flagrantly Against the Evidence.**—The instructions given by the court

whether correct or not are the law of the case and binding upon the jury, and a judgment based upon a verdict which is flagrantly against the evidence under the instructions given will be reversed.

2.   Contracts—Breach—Measure of Damages.—The measure of damages for a breach by the vendee of an executory contract for the purchase of elm logs is not lost profits, but is the difference between the contract price and the market value at the place and time of delivery, except under exceptional circumstances.

3.   Contracts—Breach—Time of Delivery.—Where the time of delivery must continue under the contract through an indefinite period, the time of the breach of the contract is deemed to be the time of delivery.

W. J. WEBB and JOHN R. EVANS for appellant.

J. W. RONEY for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

On March 30, 1914, appellee and appellant entered into a written contract by the terms of which appellee purchased from appellant 500,000 feet of good, clear elm timber in the log, for which appellee agreed to pay $10.50 per thousand feet as the logs were received and measured. As part of the same contract appellee sold to appellant six yokes of oxen, a log wagon, yokes, etc., for $1,500.00, for which amount appellant executed his note, upon which was to be credited an agreed portion of the proceeds of each delivery of logs.

Operating under this contract, appellant had delivered to appellee on June 15, 1914, 172,236 feet of timber, and out of the proceeds therefor had received credit on his note for $744.94, when, a controversy having arisen between the parties about the measurement of the logs, the contract was terminated according to the contention of appellee by mutual consent, whereas appellant contends that he did not agree to the cancellation of the contract, but that appellee, without his consent and without right, thereafter refused to observe its terms or to receive any more timber under the contract.

On September 5, 1914, appellee instituted this action seeking to recover of appellant the balance due on the note for $1,500.00 executed to it by appellant, alleging to be due $755.06, and seeking to enforce a lien asserted upon the oxen, wagon, etc., for payment of which the note had been given.

Appellant filed an answer and counterclaim asserting that a certain credit upon the note for $60.00 should have been for $76.00, and that the balance due was $739.06. The counterclaim as asserted is made up of two items, the first of which is for 32,392 feet of timber in logs which appellant had cut and hauled to the railroad station ready for shipment to appellee on June 15, 1914, when the contract was rescinded or broken, which logs appellant claims he was unable to sell and they became worthless, and he sought to charge the appellee for same at the contract price of $10.50 per thousand feet, which amounts to $340.11. The second item asserted in the counterclaim was for profits upon the balance of the 500,000 feet of timber which appellee had refused to accept, it being alleged that such profits were $5.00 per thousand feet, and on this item he sought judgment against appellee for $1,638.72.

The allegations of the counterclaim were controverted by reply, and upon a trial before a jury appellee recovered a verdict and judgment against appellant for $164.06. From that judgment this appeal is prosecuted, and the only ground relied upon for reversal that we need consider is that the verdict is flagrantly against the evidence.

By instruction No. 1 the jury were told to find for appellee upon the note $755.06 or $739.06, the sum that they should believe from the evidence to be the correct amount due upon the note.

By instruction No. 3 the jury were directed to find nothing for appellant on his counterclaim if they should believe from the evidence that the timber contract was rescinded on June 15, 1914, by mutual agreement of the parties.

By instruction No. 4 the jury were instructed to return in their verdict only the one sum that they should believe to be due from one party to the other after crediting each with the amount found to be due on the several items submitted to them by the first and second instructions.

The second instruction is as follows:

"The court instructs the jury that it is undisputed in this case that the plaintiff purchased and agreed to accept from defendant 500,000 feet of good, clear elm timber, from 12 inches and up in diameter, at $10.50 per 1,000 feet f. o. b cars at Tyler and Miller's spur, and if

you believe from the evidence that under the terms of the contract the defendant delivered at said point timber of the grade and kind stated to the amount of 32,392 feet, or any part thereof, which plaintiff refused to accept, and by reason thereof such timber could not be disposed of, and became worthless and unmerchantable, then the jury will find for the defendant on his counterclaim herein $10.50 per 1,000 for such timber not exceeding $340.00 on this item. And if the jury further believe that the defendant was ready, willing and able to comply with his contract in the delivery at said points of the remainder of said timber, and the plaintiff refused to permit him to comply with his contract, then the jury will also find for the defendant on his counterclaim the difference between the contract price, $10.50 per 1,000, and what it would have reasonably cost defendant to carry out the contract, not exceeding $1,638.72, not exceeding in all on his counterclaim $1,973.83 on this item.''

It is agreed that there was 327,764 feet of the 500,000 feet contracted for that had not been delivered on June 15, 1914, when the contract was either rescinded by agreement or broken by appellee, and it is apparent that the jury found from the evidence that the contract was not rescinded by agreement, but was broken by appellee, because if they had found that the contract was cancelled by agreement, under the instructions they must have found for appellee either $739.06 or $755.06, whereas they found for appellee only in the sum of $164.06; in other words they found for appellant upon his counterclaim either $589.00 or $595.00, some part or all of which must have been found under the second part of instruction No. 2 for loss of profits to appellant by appellee refusing to carry out the contract. It will be noticed that under that part of instruction No. 2 authorizing appellant to recover for loss of profits, the jury are told to estimate these profits upon the timber refused, which was 327,764 feet, at the difference between the contract price of $10.50 per thousand feet and what it would have cost appellant to have carried out the contract. As to what it would have cost appellant to have carried out his contract no witness testifies except the appellant himself, and his testimony is that it would have cost him $5.50 per thousand feet. This is the only evidence in the record upon this question. It therefore results that un-

der the second part of instruction No. 2 the jury, having found that the contract was not cancelled by agreement, were bound to find for appellant as lost profits $5.00 per thousand feet on 327,764 feet, which amounts to $1,638.-72. Under the evidence here this instruction in effect peremptorily directed the jury to find for appellant as lost profits the sum of $1,638.72, unless the jury should believe from the evidence that the contract was cancelled by mutual agreement, in which event they could find nothing for appellant for lost profits. It is therefore manifest that the verdict is flagrantly against the evidence, and it becomes necessary to reverse the judgment, even if, as a matter of fact, the instruction does not properly define the measure of damages, as upon this question, upon which the authorities from other jurisdictions are not in harmony, this court, after careful consideration, took the definite position in the case of Lynch v. Snead Architectural Iron Works, 132 Ky. 244, wherein the authorities are exhaustively reviewed, that the instructions given by the court, whether they are right or wrong, are the law of the case.

This court has since then had that question under consideration in the cases of Louisville & Interurban R. R. Co. v. Roemmele, 157 Ky. 84; St. Paul F. & M. Ins. Co. v. Kendle, 163 Ky. 146 and Yellow Poplar Lbr. Co. v. Bartley, 164 Ky. 763, in each of which the position taken in the Lynch v. Snead case was approved.

As this case must be tried again, it becomes necessary that we indicate the proper criterion for assessment of damages. By this contract, as we view it, appellee simply bought of appellant a certain number of elm logs and, after carrying out a part of the contract, refused to receive any more of the logs it had contracted for, and in our judgment, the measure of appellant's damages, for such of the refused logs as were not rendered of no value by the breach is the difference between the contract price and the market price at the time of the breach of the contract by appellee. The general rule is thus stated in Section 243 of Sedgwick on Damages:

"Wherever the measure of damages involves the question of value, however much the market may be resorted to to determine what the value is, this resort is had as furnishing usually the best evidence of value. What plaintiff is entitled to recover is the real value of the article of property, the time, the labor or the ser-

vices, as they would be if unaffected by the defendant's tort or if the defendant's contract had been performed. If these things are bought and sold in the market, the market price shows conclusively what it would cost the plaintiff to be put in as good a position as if the tort had not been committed or as if the contract had been performed. To take the most familiar of all illustrations, in the case of failure to deliver an ordinary article of commerce sold, the vendee can replace himself by buying the article in the market. Hence his measure of damages is invariably said to be the market value. But as the cases now to be examined will show. the rule, more exactly stated, would be that his measure of damages is the value of the article. When there is no market value, the value must be got at by the best proof to be had."

In a comprehensive note in 52 L. R. A. 205, upon the question of loss of profits in contracts of sale or purchase, as damages, the general rule upon a breach by the vendee is thus stated:

"In the case of an executory contract for the sale of goods which are not specific, the rule is that the measure of damages for a refusal to receive the goods is the difference between the price agreed upon and the market value on the day appointed for delivery, or at the time they should have been received and accepted. The time when the property should have been received being deemed to be the date of the breach of contract, when no particular time for delivery is specified or when, from the nature of the contract, the time of delivery must be uncertain or must continue through an indefinite period."

Many authorities are cited to support these statements which show that this general rule has been applied to breaches of contract to purchase ore, grain, flour, hay, hops, malt, cattle, wool, bacon, canned tomatoes, glass, cement and numerous other articles of commerce, including timber and lumber. Among the cases cited covering sales of timber and lumber is the case of Miller v. Burch, 19 K. L. R. 629, 41 S. W. 307, in which case Miller had bought of Burch 500,000 feet of lumber at $16.25 per thousand feet, to be delivered by him on cars upon a certain switch in the city of Louisville. Burch refused to receive the lumber and Miller sued him for damages as a result thereof, and the trial court in the

instructions fixed the measure of damages as the difference between the agreed price of $16.25 per M. feet, "and the price that it would have cost the plaintiff to furnish under said contract." Upon appeal this court held that this instruction was erroneous, and because of that error and one other reversed the judgment. In holding that the instruction on the measure of damages was incorrect, the court said:

"In our opinion that instruction is defective for two principal reasons: First. What, in the language of the instruction, it would have cost the plaintiff to furnish under the contract, is not a proper inquiry in determining the amount of damage sustained by him. But the true and only legal criterion in such cases is the difference between the price at which the article is contracted to be sold and the market price of the same article at the date of delivery."

This same general rule was applied by this court for breach of a contract for the sale of canned corn by the vendee in the case of Zinsmeister & Bro. v. Rock Island Canning Co., 145 Ky. 25; for the sale of oranges in the case of Newton v. Bayless Fruit Co., 155 Ky. 440, and for the sale of ties in the case of Mitchell-Taylor Tie Co. v. Whitaker, 158 Ky. 651.

In our judgment the contract in the instant case falls clearly within the general rule as above stated, because the subject of this contract is elm logs, which are certainly ordinary articles of commerce and which had a marketable value at the place this contract was to be performed.

While the measure of damages for the breach by the vendee of the contract for the sale of an ordinary article of commerce is ordinarily the difference between the contract price and the market value and not of lost profits, it is true that the lost profits are adopted as the measure of damages in many cases, but in all cases when this is done it is because of some condition of the particular contract from which it is assumed that the lost profits were within the contemplation of the parties at the time the contract was made, or where the subject of the contract had no market value or other peculiar reason, when lost profits are resorted to as the best evidence of the real loss. No peculiar conditions to the contract and transaction here existed, which either necessitates or justifies a departure from the general rule, although

it has been argued that the fact, as part of this contract, appellee sold to appellant oxen and wagon for the purpose of carrying it out, makes lost profits the proper criterion. That fact, however, in our judgment, is not sufficient to do this.

In the case of Mitchell-Taylor Tie Co. v. Whitaker, *supra*, the vendor, in order to comply with his contract, was shown in the evidence to have purchased a mill and installed it on his premises for the purpose of complying with his contract, yet this court reversed that case for the sole reason that the lower court had given an instruction similar to the one given here and said:

"This instruction submitted an erroneous and prejudicial measure of damage, as was decided in the Landrum case. The measure of damage to which Whitaker was entitled, if the jury found in his favor anything on account of ties which he could have manufactured from his own land or bought from others, was the difference between the contract price and the market price at the place of delivery."

The Landrum case referred to is the Indiana Tie Co. v. Landrum, 137 Ky. 769.

It therefore appears that the correct measure of damages in this case is the difference between the contract price and the market value upon June 15, 1914, of that portion of the logs that appellee refused to accept, and upon another trial the court will so instruct the jury and confine the evidence.

For reasons indicated the judgment is reversed for proceedings consistent herewith.

Whole court sitting.