## Aud v. McAvoy.

(Decided October 26, 1917.)

### Appeal from Henderson Circuit Court.

1. Appeal and Error—Necessity of Bill of Exceptions.—In the absence of a bill of exceptions giving the evidence and the instructions of the court to the jury, it will be presumed that the case was tried upon its merits; that no evidence was admitted over the appellant's objection, and that he offered none that was excluded; that he asked no instruction that was refused and objected to none that was given; and that the evidence supports the verdict.

2. Appeal and Error—Necessity of Bill of Exceptions.—In the absence of a bill of exceptions containing the evidence and instructions the only question to be determined upon appeal is whether the pleadings support the verdict and judgment.

3. Trial—Verdict.—A verdict is the answer of a jury given to the court concerning the matters of fact committed to their trial and examination; it makes no precedent, and settles nothing but the immediate controversy to which it relates. If it decides the question in issue in such a way as to enable the court intelligently to base a judgment thereon, it is sufficient in form.

4. Trial—Verdict—Objection to Form.—If a verdict is irregular in form and either party desires to have it made more specific, he should ask to have it so made before the jury is discharged; allowing the jury to be discharged without objection and without

motion to have them correct or extend their verdict, will be deemed a waiver of formal defects in it.

HENSON & TAYLOR for appellant.

YEAMAN & YEAMAN for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

On June 26, 1911, S. S. Payne and Ernest Aud executed and delivered to H. J. McAvoy their five joint promissory notes for $2,500.00 each, and payable on the first day of January in the years 1913, 1914, 1915, 1916 and 1917, respectively. The notes represented the rent for McAvoy's farm for a term of five years. On February 12, 1916, McAvoy filed this action against Payne and Aud upon the last three notes.

Payne and Aud filed separate answers; but as Payne seems to be satisfied with the judgment against him and is not appealing it is unnecessary to consider his defenses.

By his answer Aud presented four defenses: (1) He ineffectually attempted to plead *non est factum;* (2) he alleged that he signed the notes as surety and that his signature thereto, as well as Payne's, had been obtained by the fraudulent representations of McAvoy's agent; (3) that he had not been notified of the non-payment of the notes at maturity; and (4) that he had been released by two subsequent contracts between McAvoy and Payne by which the original contract had been materially changed to his prejudice. It will be noticed that the last three defenses are dependent upon the fact that Aud was not a principal, but signed the note only as surety for Payne.

The circuit court sustained a demurrer to the first, third, and fourth paragraphs of the answer and overruled the demurrer to the second paragraph which set up the fraud practiced upon Payne and Aud by McAvoy's agent. In avoidance of this defense the reply alleged that Payne and Aud were partners in the renting transaction; and Aud traversed that allegation by his rejoinder. Upon a trial the jury returned a majority verdict reading as follows:

"We, the undersigned jury, find for the plaintiff the sum of $1,750.00 yearly rental for four years with six per cent. interest from maturity, with a credit of $4,510.15, and holds Ernest Aud as surety on this judgment."

The plaintiff moved the court for a judgment against Payne and Aud for the amount claimed in the petition notwithstanding the verdict of the jury, but the court overruled the motion and entered a judgment upon the verdict.

Both parties thereupon entered motions and filed grounds for a new trial; but both motions were overruled. Aud appealed and McAvoy has been granted a cross-appeal in this court.

Although time was given in the circuit court to both parties to file a bill of exceptions, neither party did so; and these appeals are now prosecuted without a bill of exceptions. As we have neither the evidence nor the instructions given by the trial court, it will be presumed that the case was tried upon its merits; that no evidence was admitted over the appellant's objection, and that he offered none that was excluded; that he asked no instruction that was refused and objected to none that was given; and, that the evidence supports the verdict. Pittsburg C. C. & St. L. Ry. v. Darlington's Admrx., 129 Ky. 226; Lowe v. Taylor, 172 Ky. 275.

In this state of the record the only question to be determined is whether the pleadings support the verdict and judgment. Martin v. Richardson, 94 Ky. 183, 19 L. R. A. 692, 42 Am. St. Rep. 353; Southern Ry. Co. v. Thurman, 25 Ky. L. R. 805, 76 S. W. 499; Settle v. Gibson, 147 Ky 617; Madden v. Meehan, 151 Ky. 222; Clark v. Wallace Oil Co., 155 Ky. 838.

Appellant contends that the verdict, upon its face, shows that the jury found for the defendants upon the issue of fraud upon the part of McAvoy's agent in obtaining the contract, because the verdict reduces the yearly rent from $2,500.00 to $1,750.00; and, that as Aud was surety only, he was released.

If Aud was surety only this argument might be well founded under the well-settled principle of law that the surety is bound only by the strict letter of his contract and that Aud, as surety, would be bound for the whole amount called for by the notes, or for none of it.

This view of the case, however, overlooks the issue as to Aud's partnership with Payne in the renting of the farm. If Aud was a partner of Payne in the transaction he could have been held liable under a *quantum meruit* instruction; and he would not be released by the changes in the contract although they might have been material.

And, he was not entitled to notice of non-payment, in any event. Elsey v. Peoples Bank, 168 Ky. 701.

So, if Aud was a principal in the notes the only defense he presented was that of fraud against McAvoy's agent in obtaining the contract; and, in the absence of the evidence and instructions upon that issue which was tried we must assume that the court properly instructed the jury upon all the issues presented by the pleadings, including the issues of fraud and as to the partnership, and that the evidence sustained the verdict.

It is argued, however, that the language of the verdict shows that the jury found that Aud was the surety for Payne and not his partner in the renting of the farm, and that the action of the court in sustaining the plaintiff's demurrers to the second and fourth paragraphs of his answer, based upon his plea of suretyship, necessarily precluded the submission of those defenses to the jury, and constitute a reversible error.

The judgment, however, does not treat Aud as a surety; it gives recovery against Payne and Aud jointly, treating them as joint makers of the notes.

Moreover, we cannot concur in appellant's interpretation of the verdict.

A verdict was defined by this court, in Walter v. Louisville Railway Co., 150 Ky. 659, 43 L. R. A. (N. S.) 126, Ann. Cas. 1914D 441, as follows:

"A verdict is the answer of a jury given to the court concerning the matters of fact committed to their trial and examination; it makes no precedent, and settles nothing but the immediate controversy to which it relates. If it decides the question in issue in such a way as to enable the court intelligently to base a judgment thereon, it is sufficient in form."

Again, in P. C. C. & St. L. Ry. Co. v. Darlington's Admr., *supra,* in speaking of the liberal construction to be placed upon verdicts the court said:

"Jurors are gathered from every walk of life. Very frequently, perhaps most generally, they are not men of literary learning. Their choice of expression is very apt to be not exact; their verdicts being frequently ungrammatical and rarely couched in the terminology of the law. Hence, courts view the findings of the jury with great leniency, and every reasonable presumption is indulged in aid of a general verdict. The main thing is to get an understanding of what the jury intended.

Their intent is to be sought for in the language they used in their verdict, interpreted in the light of the record. Resort may be had to the pleadings or other parts of the record to see what the jury meant by their verdict." See also Miller v. Shackelford, 4 Dana 280.

Applying these rules to the verdict before us, when read in connection with the judgment, it is fair to presume that the instructions submitted to the jury the questions of Aud's suretyship, and his liability as a surety, and that the jury held him liable as a principal since the verdict finds for the plaintiff generally.

It names no defendant, and "holds Ernest Aud as surety on this judgment," not as surety on the notes.

The verdict was irregular in form, but as all parties accepted it without objection, the court ignored the irregularity and entered a judgment for the plaintiff against both defendants.

If either party had desired the verdict to be more specific he should have asked it promptly and before the jury was discharged. In Walter v. Louisville Railway Co., *supra,* we said:

"The rule is well settled in this state that, if a verdict is not as specific as desired, the correct practice is then and there, before the jury is discharged, to have them reform it. Allowing the jury to be discharged without objection and without motion to have them correct or extend their verdict, will be deemed a waiver of formal defects in it. And it must then affirmatively appear that the substantial rights of the accused have been prejudiced by the informality. The presumption will not be indulged that his rights were prejudiced. (Gillum v. Commonwealth, 121 S. W. 445.)"

See, also, Romans v. McGinnis, 156 Ky. 205.

The arguments presented for and against the verdict afford a good illustration of the wisdom of the rule that we must presume there was no error committed in the trial court in the absence of a bill of exceptions showing all that the court did. Here we are not informed as to anything the trial court did upon the trial, except the entry of the judgment upon the verdict; and as the verdict and judgment are not inconsistent with the theory that Aud was a principal upon the notes, as he appeared to be, the presumption must be indulged that he was in no way prejudiced.

The same conclusion equally applies to the cross-appeal of McAvoy.

Judgment affirmed upon the original and the cross appeal.