# Cooper v. Girdler.

(Decided June 12, 1931.)

TRABUE, DOOLAN, HELM & HELM for appellant.

HUMPHREY, CRAWFORD & MIDDLETON for appellee.

OPINION OF THE COURT BY JUDGE BRATCHER—Affirming.

The appellant, Arch R. Cooper, and the appellee, Walter H. Girdler, were the plaintiff and the defendant, respectively, below. This action was instituted by the appellant to recover the sum of $10,808 upon an alleged contract. The appellant claims that the appellee sold him 80 shares of stock in the Kentucky Oxygen Hydrogen Company. He states that by the terms of the contract, "the purchase price of said stock was to be loaned to the plaintiff by the defendant and that the defendant was to hold said stock as security until said loan with interest was paid." He avers appellee breached the contract and refused to deliver the stock, and asks for judgment for amount of stock and dividend, less loan and interest.

The defendant, by answer, denied the contract or that he agreed to sell the plaintiff 80 shares or any number of shares. Upon a trial by a jury on October 9, 1929, this verdict was returned: "We, the jury, find for the plaintiff in the sum of $6,350.00, based on a contract of fifty (50) shares instead of eighty (80.)" The verdict was signed by ten of the jurors, and a judgment entered in favor of the appellant for $6,350. The defendant filed motion and grounds for a new trial, which was sustained,

and a new trial granted. Upon the second trial, the jury failed to agree. The third trial resulted in a verdict in favor of the defendant. A judgment was rendered thereon dismissing plaintiff's petition. The plaintiff thereupon filed motion and ground for a new trial, which the court overruled, and he prosecutes this appeal. The sole ground relied upon for reversal is that the court erred in granting a new trial, after the finding for the plaintiff for $6,350, upon the first trial.

The facts in this record briefly stated, disclose that the Kentucky Oxygen Hydrogen Company is a Kentucky corporation. Its principal place of business is in Louisville, Ky. The appellee, Walter H. Girdler, is its president, and owned a considerable amount of its stock. The appellant, Cooper, was employed as a salesman by the company. Some time in 1924 he was sent to Birmingham, Ala., and was connected with the Standard Gas Products Company, which is owned by the Kentucky Oxygen Company. The defendant, Girdler, instituted a plan whereby the employees might purchase stock in the company. To that end he acquired a number of shares of stock from his brother at a price of $125 per share The money to pay for this stock he borrowed from the National Bank of Kentucky, to be repaid upon the sale of the stock to the employees of the Kentucky Oxygen Hydrogen Company. In order to enable these employees to pay for the stock, Girdler arranged with the Louisville National Bank to loan these employees an amount equal to the price of the stock purchased; the stock to be paid for in monthly payments over a one-year period. The stock was made out to the employees and delivered to them; in turn they pledged it to the Louisville National Bank as security for the loan, the loan being made direct to the employees, and the full purchase price was paid by them to Girdler. The plaintiff purchased 11 shares of this stock at $125 per share. It is stated that, under a special concession to Cooper, it was arranged with the Louisville National Bank that he have eighteen months instead of one year to pay for his stock. There is no dispute about the 11 shares of stock.

A few days after the sale of the 11 shares of stock, the appellant, Cooper, says he went to Girdler and expressed his desire to purchase 80 shares of the stock; that his mother had sufficient deposit with the Louisville Trust Company to make the payment. He states he told Girdler she would let him have the money. Upon this

occasion, he says, Girdler sold him the 80 shares of stock, but advised against borrowing the money from his mother, stating, as he already had it financed, he could just pay the interest, and he would accept the stock as collateral. He accepted this offer, and purchased the stock and pledged it as collateral for the loan.

In September of 1925, the Kentucky Oxygen Hydrogen Company declared a 50 per cent. stock dividend. The 80 shares of stock under that dividend earned 40 shares, making 120 shares. The 80 shares and the 40 shares drew regular dividends in addition to the stock dividend. The market price of these shares was, at the time the alleged contract was breached, $175 a share. The appellant says that in November, 1926, he offered to pay the loan and the interest at 6 per cent. and demanded the stock, but that the appellee refused to deliver it to him. The stock and the dividends less the loan and the interest on the loan, at the time of the alleged breach, amounted to the sum of $10,808, without going into the arithmetical calculations. The appellant introduced a man by the name of Bridges, who was a friend of both appellant and appellee. Bridges testified that Girdler told him in Birmingham that he had sold $10,000 worth of stock to Cooper. It will be observed that 80 shares of stock at $125 a share would amount to $10,000.

Girdler denied he had at any time made a contract with Cooper to sell him 80 shares of stock, or any amount of stock except 11 shares sold him as an employee of the company and under its employees' stock-purchasing plan. He did say that, some time after the purchase of the 11 shares of stock, Cooper approached him in regard to the purchase of some additional stock in the company. He told Cooper that he would sell him the stock, provided he (Cooper) would make arrangements for the money to pay for it. He states that they discussed Cooper's plans for raising the money. He said he held out 50 shares for four months, and that he was perfectly willing for him to have the stock, provided he could make arrangements to pay for it. He never told Cooper he was holding the stock for him, and that there was never any definite arrangements between them as to any certain amount of stock. That Cooper never raised the money, and therefore the stock was not sold to him.

The sole question upon this appeal is whether the court erred in setting aside the verdict obtained by the plaintiff in the first trial and granting the trial which

resulted in a verdict for the appellee. The issue, as made up by the pleadings and the proof, was the contract between the appellant and the appellee for the 80 shares of stock. At the conclusion of the evidence on the first trial, the court instructed the jury as follows:

"1. If the jury believe from the evidence that the plaintiff Arch R. Cooper, during the latter part of January, or early part of February, 1925, purchased of the defendant Walter H. Girdler, and the defendant Girdler sold to said Cooper, the eighty shares of the capital stock of the Kentucky Oxygen Hydrogen Company referred to in the evidence, at $130.00 a share, under an agreement by which the said defendant Girdler was to hold the said stock and finance the purchase thereof at a charge to the plaintiff Cooper of six per cent. per annum interest, accruing dividends to be credited on the purchase price, and the said purchase price was to be paid by the plaintiff at some time in the future, no date being set, and if they further believe from the evidence that the defendant Girdler repudiated the contract and refused to accept the payment of said stock, or to deliver said stock to the plaintiff Cooper, then the law is for the plaintiff Cooper and the jury will so find."

The jury returned a verdict as set out above, "based upon a contract of fifty (50) shares instead of eighty (80) shares." It is contended by the appellant, Cooper, that the court erred in setting aside the verdict and granting a new trial which resulted adversely to him, arguing that there was much controversy in the testimony as to whether there was a contract for 50 or 80 shares of stock It was the duty of the court to base the instructions on the pleading and proof. Pugh v. Eberlein, 190 Ky. 386 227 S. W. 467, and the duty of the jury to follow the instructions, Lynch v. Snead Architectural Iron Works, 132 Ky. 241, 116 S. W. 693, 21 L. R. A. (N. S.) 852, infra.

The appellant in his petition specifically alleges "the plaintiff and defendant entered into an oral contract during the month of February, 1925, by the terms of which the plaintiff purchased from the defendant and the defendant sold to the plaintiff eighty (80) shares of the stock of Kentucky Oxygen Hydrogen Company." There is no allegation in the petition that there was a contract for any number of shares other than the 80.

It is admitted incidently in this record that there was a conversation between these parties as to the sale of other shares of stock. It is admitted that for some months 50 shares of stock were held for the appellant. This amount of stock was held pending the arrangements for money to pay for it. There was no allegation of the petition making this 50 shares of stock any part of the contract relied upon here. The evidence as to the 50 shares of stock, while probably not exactly incompetent, had no probative value.

The contract by appellant's evidence was for 80 shares of stock. He told the manner of purchase and of payment. It is conceded that the stock was never delivered to him. He never at any time voted this stock or authorized anybody to vote it in his name. Hence the contract for 80 shares is the sole issue.

The court instructed the jury, and properly so, upon that issue. The jury disregarded the instructions; rendered a verdict contrary to the instruction. Hence the verdict, under the opinions of this court, is contrary to the law. Lynch v. Snead Architectural Iron Works, 132 Ky. 241, 116 S. W. 693, 21 L. R. A. (N. S.) 852; Louisville & I. R. R. Co. v. Roemmele, 157 Ky. 84, 162 S. W. 547; St. Paul Fire & Marine Insurance Co. v. Kendle, 163 Ky. 146, 173 S. W. 373; Yellow Popular Lumber Co. v. Bartley, 164 Ky. 763, 176 S. W. 201; Barney v. Jolly Hoop Co., 172 Ky. 99, 188 S. W. 1094; Krieger, County Judge, v. Standard Printing Co., 191 Ky. 552, 231 S. W. 27; Kahler Co. v. W. P. Brown & Sons, 200 Ky. 326, 254 S. W. 922; Farmers' Bank & Trust Co. v. Harding, 209 Ky. 3, 272 S. W. 3; Louisville & N. R. R. Co. v. Muncey, 229 Ky. 538, 17 S. W. (2d) 422. In view of the authorities above cited, the rule is firmly established that, where a verdict is contrary to the instructions, it is contrary to law within the meaning of the Civil Code of Practice, sec. 340, subsec. 6, and the court is thereby authorized to, and it is its duty to, set such a verdict aside and grant a new trial. The appellee argues that the court properly set aside the verdict and granted a new trial because there was no evidence to sustain the verdict. Commonwealth Life Insurance Co. v. Pendleton, 231 Ky. 591, 21 S. W. (2d) 985; 66 A. L. R. 1526; Chesapeake & O. Railroad Co. v. Snyder, 164 Ky. 432, 175 S. W. 640. There is no evidence in this record to any agreement or contract relative to the sale of 50 shares of stock as found by the jury. It is not testified to by any witness that there was a contract for the sale of 50 shares of stock. Cooper

does not claim a contract for 50 shares. Girdler denies any contract for the sale of 50, 80, or any other number of shares of stock. We therefore conclude there was no evidence upon which the verdict in the first trial could have been justified.

The appellant says in his brief that a verdict is the jury's answer concerning facts and their decision as to the amount which should be rendered in favor of a party. He further argues that, if the verdict decides the question in such a way as to intelligently enable the court to pass judgment, it should not be disturbed. The case of Aud v. McAvoy, 177 Ky. 380, 197 S. W. 824, is cited. It is contended that the verdict rendered in the first trial was sufficient to enable the court to intelligently render a judgment thereon, and that a judgment was rendered in favor of appellant. He reasons, therefore, it was error to set it aside. To this conclusion we cannot agree. The verdict very intelligently stated, among other things, that it was "based upon a contract for the sale of fifty (50) shares instead of eighty (80)." It was therefore without a basis in fact or law. It was not based on, or consistent with, the pleadings or the evidence, and was in direct conflict with the instructions of the court which was the law. After the first verdict was set aside, upon a third trial a verdict was returned in favor of the defendant. The record of the first trial only is before us on this appeal. The appeal is from the judgment rendered on the last trial in favor of the defendant. The only errors assigned and discussed is the order setting aside the first verdict and granting a new trial in this case. In view of the record and the authorities above cited, we are of the opinion, and so hold, the court abused no sound discretion in granting the new trial, and that no error was committed.

Therefore the judgment is affirmed.