## Malone's Ex'x v. Chesapeake & O. Ry. Co.

(Decided June 20, 1933.)

J. M. COLLINS, T. D. SLATTERY and B. S. GRANNIS for appellant.

BROWNING, REED & ZEIGLER and BROWNING & DAVIS for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Catherine Malone, as executrix of Thomas Malone, deceased, brought this suit against the Chesapeake & Ohio Railway Company, Charles Frey, its engineer, John Davenport, its fireman, and John Lewis, its foreman, to recover damages for his death. The first trial resulted in a verdict and judgment for the defendants. A new trial was granted, and on the second trial the jury again returned a verdict in favor of the defendants. Plaintiff appeals.

Briefly the facts are these: A short time prior to the accident Malone, Harry Brown, a special agent and employee of the railway company, and Sam Jesse accompanied Commodore Pollitt to his home in Vanceburg, where they partook of liquid refreshments. Pol-

litt owned and operated a Chevrolet coach. Brown rode with Pollitt, the driver, on the front seat, and Malone and Jesse were on the rear seat. On their return trip to town they proceeded in a northerly direction toward the railroad crossing on Market street. There was some evidence that on reaching the railroad crossing Pollitt placed his foot on the accelerator instead of the brake, but, however this may be, the car was driven immediately in front of an engine and caboose. The engine struck the car and Malone was killed. There was some evidence that the engine was going about 30 miles an hour, and three witnesses, who claimed that they were in a position to hear, testified that they did not hear any signals of the engine's approach. On the other hand, the evidence of the trainmen and many others was to the effect that the engine was going from 12 to 15 miles an hour, that the whistle was blown for the Second street crossing, and also for the Courthouse crossing, which was only a short distance from the place of the accident, and that the bell was ringing all the time. It was further shown that the electric crossing bell, which could be easily heard for a distance of a square, was ringing at the time of the accident. It is true that there was an effort to discount the fact that the electric bell was ringing by evidence to the effect that it sometimes rang continuously, but there was no evidence that it ever rang when there was no engine or cars on the block.

It is unnecessary to consider the evidence bearing on the contributory negligence of the driver, or the contributory negligence of Malone. Before there could be a recovery it was necessary to show that Malone's death was due to some act of negligence on the part of the defendants. The acts relied on were excessive speed, failure to keep a lookout, and failure to warn. While there was some conflict in the evidence, the weight of the evidence on these issues was in favor of the defendants, and there is no basis for the insistence that the verdict was flagrantly against the evidence.

All the instructions, ten in number, were given upon motion of appellant. That being true, any error therein was invited, and cannot be relied on as a ground for a new trial.

Appellant's chief insistence is that the court failed to give Instruction X, which reads as follows:

"The court instructs the jury that if they believe from the evidence that the decedent, Thomas Malone, was using ordinary care for his own safety, the negligence of Commodore Pollitt, if any, can not be imputed to Malone."

Ordinarily an instruction embodying the theory presented by the offered instruction is proper, and a case might arise where a refusal to give such instruction was prejudicial error. We find, however, that by instruction No. 5 the jury were told, in substance, that, if they believed from the evidence that the death of Malone was the proximate result of the combined negligence of both the railway company, its agents and employees, and of Commodore Pollitt, they should find for the plaintiff. This was equivalent in effect to telling the jury that the negligence of Pollitt, the driver, was not attributable to Malone. That being true, the theory presented by the offered instruction is fully covered by the given instruction, and the action of the court in refusing to give the offered instruction was not prejudicial error.

There is the further complaint that the verdict is contrary to law. It is true that Civil Code of Practice, section 340, subsec. 6, authorizes a new trial on the ground that the verdict is contrary to law, but a verdict is contrary to law only when it is contrary to the instructions, whether right or wrong. Lynch v. Snead Architectural Iron Works, 132 Ky. 241, 116 S. W. 693, 21 L. R. A. (N. S.) 852; Yellow Poplar Lumber Co. v. Bartley, 164 Ky. 763, 176 S. W. 201; Cooper v. Girdler, 239 Ky. 565, 39 S. W. (2d) 1009. This is not a case where the evidence was all one way and the jury disregarded the instructions. On the contrary, it is a case where both the evidence and the instructions authorized the verdict. That being true, it cannot be said that the verdict is contrary to law.

Though the death of Mr. Malone was a sad one, two juries have declared that it was not due to any negligence on the part of the railway company, or its employees. As the last verdict is abundantly supported by the evidence, and no prejudicial error occurred during the trial, we are not at liberty to reverse the judgment.

Judgment affirmed.